**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harvey STONE, Defendant-Appellant.**

**No. 84–5014.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided Sept. 4, 1985.

Paul Seave, Kathryne Anne Stoltz, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Bruce I. Hochman, Harvey D. Tack, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for defendant-appellant.

Before GOODWIN, POOLE and BOO-CHEVER, Circuit Judges.

GOODWIN, Circuit Judge.

Dr. Harvey Stone appeals his conviction for attempted income tax evasion in violation of 26 U.S.C. § 7201. He challenges the government's use of bank deposit records to establish that he received more income than he reported and asserts that samples of bank deposit records did not constitute proof beyond a reasonable doubt. We affirm.

During 1976 and 1977, Stone, a cash basis taxpayer, filed returns reporting gross receipts from his medical practice of $117,-476 and $120,848, respectively. An IRS investigation revealed that gross receipts were $160,662 in 1976 and $196,541 in 1977. On July 14, 1983, Stone was charged in a two-count indictment with willfully attempting to evade his income tax obligations by filing false returns for both years. Stone was convicted upon a bench trial. He has been placed on three years' probation and fined $10,000.

Stone's system for recording billings and receipts from his medical practice was simple. Each week Stone mailed to his billing clerk cards containing information including patients' names, service performed and the amount to be billed. The clerk used each card to record the dates when she billed the insurance carrier and the patient after receipt of insurance payment, the amounts received, and the balance due.

Payments from insurance carriers and patients were made directly to Stone, who deposited payment checks in his two business checking accounts. Stone would then write on the envelope enclosing the check the date on which he received each check, the patient for whom the payment was made, and the amount received. Each week he sent these accumulated envelopes to his clerk, who recorded the information from the envelopes on her cards and subtracted amounts paid from subsequent bills. As each account became fully paid, she would place the card in a paid-in-full file.

Each January, the clerk delivered all the paid-in-full cards to Stone. She did not deliver any cards which reflected payments

received during that year unless the patient's total bill had been paid in full. The record does not reveal what became of the cards recording incomplete payments.

Stone apparently used these paid-in-full cards to determine his annual income. Because Stone did not make his own records available to the IRS, the IRS analyzed his bank deposits.[1] As part of its bank deposits investigation, the IRS developed three major sources of information.

First, the IRS obtained from Stone's bank copies of signature cards, monthly statements, and all deposit slips for Stone's checking and savings accounts. From this information, the IRS calculated the total amount of deposits into Stone's bank accounts in 1976 and 1977. Second, the IRS contacted a number of insurance companies, requesting copies of all checks issued to Stone for medical services rendered, all forms reflecting these payments, and all claim forms submitted by or on behalf of Stone. Third, the IRS investigated the bank records of the checks deposited into Stone's two checking accounts. In order to discover what portion of Stone's total deposits represented payment for medical services rendered, the IRS selected 12 large deposits—one for every other month in 1976 and 1977—as a representative sample, and had the bank produce a copy of every check deposited with those deposits.

The IRS attempted to verify that these checks were payments for medical services rendered by writing or calling the makers of the checks. Although the IRS was only able to verify a small portion of the checks, almost all the checks so verified in the sampling process were payments for medical services. Checks that were for nonincome items were identified by the IRS and excluded from gross receipts from the medical practice. The IRS then calculated an estimate of Stone's gross receipts and income which exceeded the amount Stone reported in 1976 and 1977.

In this appeal, Stone alleges that the IRS could not have established that he acted willfully or that a tax deficiency exists because the government relied upon sampling and statistics about his bank deposits, instead of examining all his receipts in full.

■ The elements of attempted income tax evasion under 26 U.S.C. § 7201 are the existence of a tax deficiency, willfullness in the attempted evasion and an affirmative act constituting an evasion or attempted evasion. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). Stone alleges that the IRS failed to prove the first two elements.

In *United States v. Morse*, 491 F.2d 149 (1st Cir.1974), the court explained what the government must do to establish the existence of a deficiency if it uses the bank deposit method:

In order to legitimately avail itself of this [bank deposits] approach, the government must initially introduce evidence to show (1) that, during the tax years in question, the taxpayer was engaged in an income producing business or calling; (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits.

491 F.2d at 152.

■ The Court in *Morse* sets forth the requirement that the government has "an overall burden to prove that [it] has done the best [it] can to discover, and exclude, all non-income items from the reconstructed income." *Id.* at 154. The standard of conduct for the government's examination of the deposited items in a bank deposit investigation is an "adequate and full investigation" to distinguish between the income and nonincome in the bank deposits. *United States v. Helina*, 549 F.2d 713, 720 (9th Cir.1977), quoting *Morse*, 491 F.2d at 152. The critical question is whether the government's investigation has provided sufficient evidence to support an inference that an unexplained excess in bank deposits

---

1. For a description of the bank deposits method of proving an underreporting of income, *see*

*United States v. Soulard*, 730 F.2d 1292, 1296 n. 1 (9th Cir.1984).

is attributable to taxable income. *United States v. Slutsky*, 487 F.2d 832, 841 (2d Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974), citing *Holland v. United States*, 348 U.S. 121, 137, 75 S.Ct. 127, 136, 99 L.Ed. 150 (1954). This court has emphasized that the government must assume "a special responsibility of thoroughness and particularity in its investigation and presentation," when it uses the bank deposits method of proof. *United States v. Hall*, 650 F.2d 994, 999 (9th Cir. 1981), citing *Holland*, 348 U.S. at 135–36, 75 S.Ct. at 135–36. Nevertheless, it is well settled that the government is not obliged to prove the exact amount of a deficiency so long as the taxpayer's understatement of income is substantial. *Morse*, 491 F.2d at 152 n. 3. *See United States v. Procario*, 356 F.2d 614, 618 (2d Cir.), *cert. denied*, 384 U.S. 1002, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966).

Stone admits that he satisfies the first two *Morse* requirements, but argues that because the government examined only selected copies of the deposited checks, the government therefore may not have eliminated all nonincome items. He also argues that because the government could have obtained virtually all of the deposited checks from his bank, it was under an obligation to do so. He says that its fragmentary evidence failed to prove beyond a reasonable doubt that nonincome items had not been included in deposits not examined by the IRS.

■ A full and adequate investigation does not automatically require that the government examine all of the copies of the deposited checks in a bank deposits method-of-proof simply because the copies of all the checks might have been available. This court recently held that the issue of the completeness of bank records bears on the government's burden of proof, not the admissibility of the evidence. We declined to hold that the government must show completeness in addition to authenticity and relevancy before bank records exhibits may be admitted as a part of a bank deposits method of proof. *United States v. Soulard*, 730 F.2d 1292, 1298 (9th Cir.1984).

■ The "adequacy of a bank deposits investigation necessarily turns on its own circumstances." *Slutsky*, 487 F.2d at 841. The evidence produced was admissible. The trier of fact drew inferences that were permissible. The evidence was more than adequate to support the inference that the defendant's bank deposits were income from his medical practice and were in fact currently taxable but unreported income. More evidence, of more deposits, might have proved more exactly the amounts of unreported income, but the exact amount was largely irrelevant to prove the offense charged in the indictment. *Id.* at 842.

■ We also have little difficulty concluding that the government proved beyond a reasonable doubt that Stone acted willfully. We review the evidence in the light most favorable to the government. *United States v. Spetz*, 721 F.2d 1457, 1477 (9th Cir.1983). Stone's consistent pattern of unreporting his income is sufficient to infer willfulness. *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir.1980); *United States v. Frank*, 437 F.2d 452, 453 (9th Cir.) *cert. denied*, 402 U.S. 974, 91 S.Ct. 1661, 29 L.Ed.2d 139 (1971).

Affirmed.