KAROL L. CAPARASO AND JOHN CAPARASO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caparaso v. Commissioner
Docket No. 26205-88
United States Tax Court
T.C. Memo 1990-613; 1990 Tax Ct. Memo LEXIS 686; 60 T.C.M. (CCH) 1358; T.C.M. (RIA) 90613; December 5, 1990, Filed *686 Decision will be entered under Rule 155. John Caparaso, pro se. Deborah M. Leonard, for the respondent. CLAPP, Judge. CLAPP
*1970 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' *687 Federal income taxes as follows: Additions to tax under section
Year
Deficiency
6651(a)(1)
6653(a) 6653(a)(1)
6653(a)(2)
1980
$ 24,312.00
-- $ 1,215.60
--
--
1981
51,735.00
$ 12,933.75
--
$ 2,586.75
*
After concessions by respondent, the issues are (1) whether petitioners received additional net income from Farm Supply Distribution (Farm Supply) in taxable years 1980 and 1981; (2) whether petitioners received additional commission income from Four Seasons Real Estate, Inc. (Four Seasons) for taxable year 1981; and (3) whether petitioners are liable for additions to tax in taxable years 1980 and 1981 pursuant to sections 6651(a)(1), 6653(a), (a)(1), and (2). All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached *688 exhibits. Petitioners resided in Fort Wayne, Indiana when they filed their petition. All references to petitioner in the singular will be to John Caparaso. From January 1980 to May 1980, petitioner was employed as a salesman with Bristol-Meyers Company selling animal pharmaceuticals. He incurred employee business expenses of $ 4,034 during this time. In June 1980, petitioner became disabled from a lower back injury, which entitled him to disability benefits from Bristol-Meyers Company. Sometime in 1980, petitioner began Farm Supply, a sole proprietor business that distributed animal pharmaceuticals. During 1980, Farm Supply had approximately 10 commissioned salesmen. Petitioners reported gross receipts from sales, cost of goods sold, and expenses associated with Farm Supply on Schedule C of their 1980 income tax return. In 1981, Farm Supply had approximately 13 commissioned salesmen. Petitioners did not report any gross receipts, cost of goods sold, or expenses associated with Farm Supply for 1981. Due to the inadequacies of petitioners' records, respondent used an indirect method of analysis to compute their gross receipts and cost of goods sold for the years in issue. *689 The bank deposits analysis used by respondent revealed that petitioners had gross receipts from Farm Supply in the amounts of $ 120,193.64 in 1980 and $ 200,893.69 in 1981. Respondent examined petitioners' available sales invoices to determine the cost of goods sold. In 1980, the cost of goods sold was 68 percent of total sales, or $ 81,731.68, and in 1981, the cost of goods sold was 71 percent of total sales, or $ 142,634.52. For the taxable year 1980, the parties agreed that petitioners are entitled to the following deductible expenses associated with Farm Supply: Type of Expense
Amount
Advertising
$    881.00
Commissions
5,798.46
Depreciation (office equipment)
224.00
Insurance
553.00
Legal Fees
400.00
Utilities
784.00
Dues and Publications
43.00
Supplies
1,039.00
Rent
22.00
Outside Service
384.00
Tax, Licenses and Permits
430.00
Telephone
3,540.00
Extra Help
650.00
Bank Charges
22.00
Total
$ 14,770.46
*1971 For the taxable year 1981, the parties agreed to the following deductible expenses: Type of Expense
Amount
Advertising
$  1,392.00
Commissions
12,993.00
Refunds
1,367.00
Legal and Professional
1,399.00
Labor
1,050.00
Office
1,492.00
Printing
15.00
Interest
253.00
Depreciation (office equipment)
321.72
Rental of Equipment
627.00
Insurance
326.00
Outside Services
103.00
Telephone
4,490.00
Repairs
13.00
Utilities
568.00
Total
$ 26,409.72
*690 In August 1981, petitioner terminated his Farm Supply business, and from October 1981 through December 1981 he sold real estate as a commissioned agent with Four Seasons. Petitioners reported gross receipts and expenses pertaining to the real estate activities on Schedule C of their 1981 income tax return. The parties agreed to the following deductible expenses in connection with these real estate activities: Type of Expense
Amount
Advertising
$   404.00
Automobile
260.00
Interest
238.00
License and Fees
62.00
Rent
1,600.00
Repairs
92.00
Telephone
33.00
Outside Service
40.00
Phone-O-Gram
58.00
Dues and Publications
300.00
Total
$ 3,087.00
Petitioners maintained numerous savings and checking accounts at Fort Wayne National Bank and Home Loan and Savings, and numerous accounts with the Merrill Lynch brokerage firm for the years in issue. During the taxable years 1980 and 1981, petitioners had interest income in the amounts of $ 665.71 and $ 10,573.50, respectively, and dividend income in the amounts of $ 4,943.00 and $ 2,540.00, respectively. After issuance of the notice of deficiency, petitioners provided respondent with additional *691 information concerning their gross receipts and expenses in connection with Farm Supply. Accordingly, respondent has redetermined deficiencies in income tax of $ 8,199.25 for 1980 and $ 19,533.40 for 1981. OPINION The issues for decision are (1) whether petitioners received additional net income from Farm Supply in 1980 and 1981; (2) whether petitioners received additional commission income from Four Seasons in 1981; and (3) whether petitioners are liable for additions to tax in 1980 and 1981 pursuant to sections 6651(a)(1), 6653(a), (a)(1), and (2). Taxpayers are required to keep such books and records as are sufficient to accurately reflect income. Sec. 6001. If a taxpayer fails to maintain records, respondent may resort to other means of determining income. Sec. 446(b). Respondent, in reconstructing petitioners' income, employed the bank deposits method of computing income. This Court has repeatedly upheld respondent's use of this indirect method of income reconstruction. Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978); Huff v. Commissioner, T.C. Memo. 1988-564. The assumption underlying the bank deposits method of income reconstruction *692 is that if a taxpayer is engaged in an income-producing activity and regularly makes deposits to bank accounts, then those deposits, less amounts identified as nonincome items, constitute taxable income. United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985); Bencivenga v. Commissioner, T.C. Memo. 1989-239. A presumption of correctness attaches to respondent's determination, and the taxpayer has the burden of overcoming such presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have failed to disprove respondent's computations for the taxable years in dispute. It is clear that petitioners' records were incomplete and inadequate. When asked by respondent to produce records verifying income and expenses for Farm Supply, petitioners at first failed to do so. Eventually, they supplied respondent with some cancelled checks, receipts, and sales invoices. Petitioners claimed, however, that their records had been destroyed by a flood, and they were unable to reconstruct all receipts and expenses. Petitioners maintained a business checking account for Farm Supply and 13 additional bank and brokerage accounts *693 for their personal use. In an attempt to determine a correct statement of gross receipts, respondent reviewed all of these accounts. He identified as many deposits as possible that clearly were business receipts. All nontaxable sources of funds and funds previously included in taxable income, such as salary, disability pay, dividends and interest, were excluded from respondent's calculations of gross business receipts. Respondent *1972 concluded that all remaining unidentified deposits were additional business receipts. In 1980 and 1981, petitioners had gross receipts of $ 120,193.64 and $ 200,893.69, respectively. Next, respondent reviewed those sales invoices provided by petitioners to ascertain the cost of goods sold for the years in issue. Most of the invoices provided had the cost of goods sold handwritten on them. For each year, respondent divided the total cost of goods sold by the total sales figure to arrive at a percentage of costs of goods sold to actual sales. For example, of the invoices that petitioner gave to respondent for 1980, 79 percent of them listed the cost of the goods sold. Respondent totaled the cost of goods sold from these invoices and arrived *694 at $ 27,115.97. Respondent then totaled the gross sales amounts from these invoices and arrived at $ 39,639.63. The percentage of cost of goods sold to total sales was computed by dividing $ 27,115.97 by $ 39,639.63, to arrive at 68 percent for 1980. Using a similar computation, respondent determined that cost of goods sold represented 71 percent of total sales in 1981. Petitioners, by their failure to keep complete and accurate records, created the need for an approximation of cost of goods sold. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We find respondent's calculations to be reasonable and accurate. Next respondent multiplied gross receipts by 68 percent and 71 percent to determine the actual cost of goods sold for 1980 and 1981, respectively. Respondent then subtracted the cost of goods sold from the gross receipts to determine petitioners' gross profits and subtracted business expenses from gross profits to determine petitioners' net profits. Petitioners' net profit from Farm Supply was $ 23,691.50 in 1980 and $ 31,849.45 in 1981. At trial, petitioner presented no witnesses or credible evidence to support his claims that such unidentified deposits *695 were not business receipts, that he was entitled to expenses in addition to those previously conceded by respondent, or that respondent's calculations for cost of goods sold were incorrect. Instead, petitioner's actions were disruptive and uncooperative. His uncorroborated testimony was inconsistent and unconvincing. Petitioner spent a great deal of time trying to convince this Court that many of his necessary documents were missing. He argued that respondent had prevented him from presenting his case by improperly retaining records and workpapers that he had previously provided to respondent's agents. However, respondent's witnesses, Stephen Pawlowski, Tax Auditor, and Allen Atz, Appeals Officer, convinced this Court that, in fact, petitioner never presented respondent with many of these records and workpapers. Any records that petitioner provided were copied, and the originals remained in his possession. Respondent's witnesses were credible, and we do not believe that respondent withheld petitioners' records and workpapers. Petitioners did not comply with the Standing Pre-Trial Order issued by this Court, and they did not cooperate in any way with respondent to attempt to *696 resolve this matter. Initially, they refused to sign a stipulation of facts -- one that was quite generous in allowing them various deductible expenses. Petitioner eventually did so "under duress." Mrs. Caparaso, who was present early in the trial, subsequently "disappeared" and therefore never signed the stipulation. This Court ordered that the proposed stipulation of facts be deemed stipulated pursuant to Rule 91(f)(3). Respondent's determination of petitioners' gross receipts and cost of goods sold was well documented and clearly presented. It is apparent to this Court that respondent had been extremely patient and reasonable in dealing with petitioner and in attempting to determine petitioners' correct tax liability. In fact, petitioners' own accountant, Mr. Ken Wolfe, testified that petitioners' records "were inadequate," and he praised respondent's agents for their knowledge and assistance in helping him resolve petitioners' tax issues. Mr. Wolfe was in substantial agreement with the revised deficiencies and the stipulation of facts, as he testified that respondent's computations were "so close" to the results he had reached that any difference was minimal and unable *697 to be substantiated. After an examination of the record, we find that respondent has established the facts and figures upon which he based his bank deposits computation and cost of goods sold. Petitioners have failed to satisfy their burden of proving that respondent's determination of gross receipts and expenses pertaining to Farm Supply was incorrect. The doubtful fact that petitioners' records might have been destroyed by a flood does not affect this burden. See Burnet v. Houston, 283 U.S. 223 (1931). "The impossibility of proving a material fact upon which the right to relief depends, simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof." Burnet at 228. The second issue to be decided is whether petitioners received additional commission income from Four Seasons in 1981. During this year, petitioner worked as a commissioned real estate salesman for Four Seasons. Petitioner alleged that he received commission income of $ 11,943, and he produced a Form 1099 at trial to verify this amount. On Schedule C of their 1981 income *698 tax return, petitioners reported $ 11,943. Respondent contends, however, that petitioner received commission income of $ 14,758.30. Respondent introduced as evidence two checks made payable to petitioner from *1973 Four Seasons. One check in the amount of $ 10,500 was drawn on Four Seasons' escrow account, and a second check in the amount of $ 4,258.30 was drawn on Four Seasons' regular checking account. Petitioner did not deny receipt of these two checks, but he claimed that a portion of the $ 10,500 check represented repayment of a $ 6,000 loan that he had made to Four Seasons. Petitioners have the burden of proof on this issue. Other than his own testimony, petitioner did not present any evidence, such as a receipt or a promissory note from Four Seasons, to substantiate the purported loan. Petitioner's testimony was not convincing. Accordingly, we conclude that petitioners had commission income in the amount of $ 14,758.30 in 1981. The next issue is petitioners' liability in 1981 under section 6651(a)(1). Section 6651(a)(1) imposes an addition to tax for failure to file a timely return unless it is shown that the failure was due to reasonable cause and not to *699 willful neglect. The burden of proof is on petitioners to establish that reasonable cause existed for failing to file their return when due. Bebb v. Commissioner, 36 T.C. 170, 173 (1961). In 1981, petitioners requested an extension of time in which to file their return. Respondent denied the request, yet petitioners filed their return more than 6 months after the due date. There is no evidence in the record to show that their failure to timely file was due to reasonable cause and not to willful neglect. Therefore, petitioners have failed to sustain their burden of proof. The remaining issue facing us is petitioners' liability under section 6653(a) in 1980 and section 6653 (a)(1) and (2) in 1981. Sections 6653(a) and 6653(a)(1) provide that where any part of an underpayment of income tax is due to negligence or intentional disregard of rules and regulations, an additional amount equal to five percent of the underpayment may be added to the tax. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest computed on the portion of the underpayment that is attributable to negligence or intentional disregard of rules and regulations. Negligence *700 under this section is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). As with respondent's determination of deficiency, his determination of negligence or intentional disregard of rules is presumed correct and petitioners have the burden of proof to the contrary. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Respondent determined that petitioners received net income from Farm Supply in 1980 and 1981. Yet, petitioners reported losses from Farm Supply in 1980, and they did not report any income in 1981. Respondent also determined that petitioners received additional commission income in 1981 from Four Seasons, which petitioners failed to report. Petitioners were well aware that they were receiving large amounts of business income in 1980 and in 1981, as they were depositing these amounts into their business and personal accounts. Petitioner was an intelligent businessman who should have known, and did know, that gross receipts and commission *701 income were required to be reported. We find that petitioners' understatement of income tax was the result of negligence or intentional disregard of the rules and regulations. Again, petitioners have failed to present any evidence to show that respondent's determination is erroneous. Petitioners are liable for additions to tax under section 6653(a) for 1980 and under section 6653(a)(1) and (2) for 1981. Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the deficiency.↩