T.C. Memo. 2013-257

UNITED STATES TAX COURT

KULWANT S. PAWAR AND KARMJIT K. PAWAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27396-11.                    Filed November 12, 2013.

<u>Jagdip Singh</u>, for petitioners.

<u>Sarah E. Sexton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  The instant petition involves petitioners' 2005, 2006, and

2007 Federal income tax returns.  Petitioners seek redetermination of respondent's

[*2] determinations of deficiencies, an addition to tax under section 6651(a)(1),[1]

and accuracy-related penalties under section 6662(a) as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2005 | $80,212 | $20,053 | $16,042 |
| 2006 | 97,820 | --- | 19,564 |
| 2007 | 30,955 | --- | 6,191 |

Following the parties' stipulations,[2] the following issues remain for us to decide:

(1) whether petitioners had additional income from sales of $243,184 for 2006[3] and $73,307 for 2007 which they failed to report on their Schedules C,

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The parties stipulated the following before trial:  (1) petitioners received $11,940 of cancellation of indebtedness income in 2005; (2) petitioners are entitled to deduct an additional $5,866 of Schedule C advertising expenses for 2005; (3) petitioners received an additional $3,000 of Schedule C gross receipts or sales in 2005; (4) petitioners are entitled to deduct an additional $1,289 of Schedule C other expenses for 2005; (5) petitioners are entitled to deduct $97,239 of Schedule C taxes and licenses for 2005; (6) petitioners received $3,701 of cancellation of indebtedness income for 2006; and (7) petitioners are entitled to deduct an additional $3,595 of Schedule C advertising expenses for 2006.

[3]On April 6, 2006, Wells Fargo Bank erroneously deposited $14,403.86 into petitioners' bank account ending in 4843, which was later returned to the bank when the mistake was discovered.  Respondent concedes that this $14,403.86 is nontaxable.

**[*3]** Profit or Loss From Business, as gross receipts or sales.  We hold that they did to the extent stated in this opinion;

(2) whether petitioners are entitled to deduct certain Schedule C other expenses for 2006 and 2007 in excess of what respondent allowed.  We hold they are not;

(3) whether petitioners are entitled to deduct certain Schedule C advertising expenses for 2007 in excess of what respondent allowed.  We hold they are not;

(4) whether petitioners are entitled to deduct certain Schedule C taxes and licenses expenses for 2006 and 2007 in excess of what respondent allowed.  We hold they are not;

(5) whether petitioners are entitled to Schedule C costs of goods sold for 2005, 2006, and 2007 in excess of what respondent allowed.  We hold they are not;

(6) whether petitioners are liable for the addition to tax under section 6651(a)(1) for 2005.  We hold that they are; and

(7) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2005, 2006, and 2007.  We hold that they are.

Petitioners resided in Manteca, California, when they filed their petition.

[*4]                          FINDINGS OF FACT

In 1997 petitioners came to the United States from India.  In the United States Mr. Pawar started out working as a cab driver before becoming a forklift driver and, ultimately, a car salesman.  Despite having only a fifth grade education, Mr. Pawar was very successful at selling cars and eventually opened his own dealership called Manteca Quality Auto Sales in 2001.  As part of the business, Mr. Pawar purchased cars and fixed them up for resale.

Petitioners sold cars through their dealership (car lot sales) and at auction. Cars sold through the dealership had to be registered with the State and reported to the State Board of Equalization when sold.  Ms. Pawar handled all the paperwork connected with the car lot sales, including filing State taxes, paying bills, and maintaining the books.  When she did not know how to properly account for an item, Ms. Pawar obtained advice from George Fakhouri, a certified public accountant (C.P.A.) with over 40 years of experience.  Neither Ms. Pawar nor anyone else handled the paperwork in connection with petitioners' auction sales. Petitioners sold cars at auction for all three years at issue.

For all three years at issue Mr. Fakhouri prepared petitioners' Federal income tax returns using the State sales tax returns from their dealership and carbon copies of checks.  According to Mr. Fakhouri, since all sales from the car

**[*5]** lots were reported to the State, the sales tax returns had to be "absolutely accurate". However, petitioners did not provide any receipts, loan documents, nor records of cash or cashier's check transactions to Mr. Fakhouri for the preparation of their tax return. Further, petitioners did not provide Mr. Fakhouri with records of their auction sale activities because they failed to keep such records.

Finally, petitioners did not file their 2005 tax return until March 26, 2007.

I.    IRS audits

IRS Revenue Agent Charles Lion (Agent Lion) was assigned to audit petitioners' 2005 return. The 2005 audit eventually expanded to include petitioners' 2006 and 2007 returns as well.

Throughout the audit Agent Lion worked closely with Mr. Fakhouri. He routinely shared the results of the audit with Mr. Fakhouri and was receptive to Mr. Fakhouri's clarifications and suggestions. In addition to reviewing the documents provided by Mr. Fakhouri for accuracy and completion, Agent Lion further took care to remove duplicate copies of records so as not to account for them more than once.

A.    2005 audit

For the 2005 audit Agent Lion determined gross receipts by comparing petitioners' tax return with four State Board of Equalization reports. His analysis

[*6] revealed only slight discrepancies between the two. Agent Lion did not use the bank deposits method to determine petitioners' 2005 income. For petitioners' 2005 expenses Agent Lion performed a detailed analysis transaction by transaction.

B.      2006 and 2007 audits

For the 2006 and 2007 audits Agent Lion determined petitioners' income using the bank deposits method. Agent Lion performed his analysis using petitioners' bank account statements, nearly all of which he obtained by summons. To determine petitioners' income, Agent Lion first totaled all deposits to petitioners' bank accounts and then subtracted amounts which were reasonably not attributable to income, including electronic transfers between bank accounts, checks returned for nonsufficient funds, returns of purchases, and returned bank fees. Agent Lion was very responsive to Mr. Fakhouri's opinions and suggestions and frequently took them into account. Examples include deposits of State taxes and gross rents, which Agent Lion subtracted from gross deposits at Mr. Fakhouri's suggestion. Indeed, Mr. Fakhouri testified that at one point he and Agent Lion stepped through deposits one by one until Mr. Fakhouri could not account for any of the remaining deposits. In August 2011 Agent Lion closed the 2005, 2006, and 2007 audits after he ceased to receive further responses or

[*7] substantiating documents from petitioners. In making allowances for petitioners' 2006 and 2007 expenses, Agent Lion used a sampling technique. See Internal Revenue Manual pt. 4.46.4.2.10 (Mar. 1, 2006).

C.    Summary of 2005, 2006, and 2007 audit results

The following table summarizes the results of Agent Lion's audits for 2005, 2006, and 2007.

| | 2005 | | 2006 | | 2007 | |
|---|---|---|---|---|---|---|
| Items | Return | Exam | Return | Exam | Return | Exam |
| Cancellation of debt income | -0- | $11,940 | $3,340 | $7,041 | --- | --- |
| Gross receipts or sales | $1,239,917 | 1,242,917 | 1,307,865 | 1,551,049 | $1,115,714 | $1,189,021 |
| Costs of goods sold | 1,023,445 | 887,325 | 1,206,062 | 1,171,665 | 990,055 | 960,353 |
| Advertising expense | 36,655 | 30,789 | 31,143 | 27,548 | 20,336 | 17,896 |
| Taxes and licenses | 97,239 | -0- | 10,601 | -0- | 1,766 | -0- |
| Other expenses | 2,898 | 1,609 | 477 | 477 | 27,487 | 15,261 |

II.    Petitioners' deposit and withdrawal activity

Petitioners' 2006 bank statements for their accounts ending in 4843, 9897, and 8501 show a number of transactions in which deposits were made in one account and withdrawals were made from another account in identical amounts and close in time. The relevant transactions are summarized below.

[*8]

| Withdrawal | | | Deposit | | |
|---|---|---|---|---|---|
| Date | Amount | Account | Date | Amount | Account |
| 3/22/06 | $5,000 | 8501 | 3/22/06 | $5,000 | 4843 |
| 3/31/06 | 1,000 | 8501 | 3/31/06 | 1,000 | 4843 |
| 4/26/06 | 3,000 | 8501 | 4/25/06 | 3,000 | 4843 |
| 5/09/06 | 500 | 8501 | 5/08/06 | 500 | 4843 |
| 6/21/06 | 7,000 | 8501 | 6/20/06 | 7,000 | 4843 |
| 7/03/06 | 4,000 | 4843 | 7/03/06 | 4,000 | 8501 |
| 7/13/06 | 3,000 | 8501 | 7/12/06 | 3,000 | 4843 |
| 7/27/06 | 1,000 | 4843 | 7/28/06 | 1,000 | 8501 |
| 8/22/06 | 2,000 | 4843 | 8/22/06 | 2,000 | 8501 |
| 8/29/06 | 5,000 | 4843 | 8/28/06 | 5,000 | 8501 |
| 9/20/06 | 9,000 | 9897 | 9/20/06 | 9,000 | 4843 |
| 9/25/06 | 3,000 | 9897 | 9/25/06 | 3,000 | 4843 |
| 9/27/06 | 2,000 | 9897 | 9/27/06 | 2,000 | 4843 |
| 9/28/06 | 1,000 | 9897 | 9/28/06 | 1,000 | 4843 |
| 9/29/06 | 4,500 | 9897 | 9/29/06 | 4,500 | 4843 |
| 10/24/06 | 1,000 | 9897 | 10/24/06 | 1,000 | 4843 |
| 11/07/06 | 5,500 | 4843 | 11/07/06 | 5,500 | 9897 |
| 11/20/06 | 4,000 | 4843 | 11/20/06 | 4,000 | 9897 |
| 11/27/06 | 2,000 | 9897 | 11/27/06 | 2,000 | 4843 |
| 11/30/06 | 20,000 | 4843 | 11/30/06 | 20,000 | 9897 |
| 12/11/06 | 1,500 | 4843 | 12/11/06 | 1,500 | 9897 |
| 12/15/06 | 3,500 | 9897 | 12/14/06 | 3,500 | 4843 |
| Total | $88,500 | | | $88,500 | |

Petitioners' 2007 bank statements for accounts ending in 4843 and 9897 show the same type of activity.[4] The relevant transactions are summarized below:

---

[4]We note that 2007 bank statements for the account ending in 6236, which was identified in the parties' stipulation of facts, were not submitted into evidence. We further note that for 2005, only bank account statements for the account ending in 4843 were submitted. Thus, we could not make similar findings of

[*9]

| Withdrawal | | | Deposit | | |
|---|---|---|---|---|---|
| Date | Amount | Account | Date | Amount | Account |
| 1/18/07 | $500 | 9897 | 1/18/07 | $500 | 4843 |
| 2/02/07 | 500 | 9897 | 2/02/07 | 500 | 4843 |
| 2/06/07 | 1,500 | 9897 | 2/06/07 | 1,500 | 4843 |
| 3/05/07 | 1,000 | 9897 | 3/05/07 | 1,000 | 4843 |
| 5/09/07 | 2,000 | 9897 | 5/09/07 | 2,000 | 4843 |
| 5/25/07 | 600 | 9897 | 5/25/07 | 600 | 4843 |
| 5/30/07 | 500 | 9897 | 5/30/07 | 500 | 4843 |
| 6/08/07 | 3,000 | 4843 | 6/08/07 | 3,000 | 9897 |
| 6/11/07 | 5,000 | 4843 | 6/11/07 | 5,000 | 9897 |
| 6/25/07 | 1,500 | 9897 | 6/25/07 | 1,500 | 4843 |
| 7/02/07 | 500 | 9897 | 7/02/07 | 500 | 4843 |
| 7/16/07 | 500 | 9897 | 7/16/07 | 500 | 4843 |
| 8/03/07 | 1,000 | 9897 | 8/03/07 | 1,000 | 4843 |
| 9/11/07 | 12,000 | 4843 | 9/11/07 | 12,000 | 9897 |
| 9/21/07 | 700 | 4843 | 9/21/07 | 700 | 9897 |
| 10/29/07 | 500 | 9897 | 10/29/07 | 500 | 4843 |
| 11/07/07 | 1,000 | 9897 | 11/07/07 | 1,000 | 4843 |
| 11/16/07 | 1,000 | 4843 | 11/16/07 | 1,000 | 9897 |
| 12/12/07 | 1,000 | 4843 | 12/12/07 | 1,000 | 9897 |
| 12/13/07 | 1,000 | 4843 | 12/13/07 | 1,000 | 9897 |
| Total | $35,300 | | | $35,300 | |

III. Check from AFC of Cal., LLC--San Francisco

On December 5, 2007, AFC of Cal., LLC--San Francisco (AFC) issued

Manteca Quality Auto Sales a check for $10,000. A copy of the check, with a

---

corresponding deposits and withdrawals for 2005.

**[\*10]** handwritten note stating "Get loan on Pacifica" immediately below the check image, was submitted into evidence. In addition, petitioners' bank account statement for the account ending in 9897 shows that a $10,000 deposit was made the same day.

OPINION

I.      Petitioners' unreported income

    A.      Legal standard

Gross income includes all income from whatever source derived, unless otherwise specifically excluded. Sec. 61(a). The definition of gross income broadly includes any instance of undeniable accessions to wealth, clearly realized, and over which the taxpayer has complete dominion and control. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

In the Court of Appeals for the Ninth Circuit, to which this case is appealable absent the parties' stipulation otherwise, see sec. 7482(b)(1)(A), the Commissioner's determinations as to unreported income in a notice of deficiency are presumed correct only when they are supported by a minimal evidentiary foundation, Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); see also Delaney v. Commissioner, 743 F.2d 670, 671 (9th Cir. 1984) (stating that the Commissioner must produce some substantive

**[*11]** evidence demonstrating that the taxpayer received unreported income), aff'g T.C. Memo. 1982-666. Once the Commissioner meets his burden of production, "the taxpayer must establish by a preponderance of the evidence that the determination is arbitrary or erroneous." Delaney, 743 F.2d at 671; United States v. Stonehill, 702 F.2d 1288, 1294 (9th Cir. 1983).

Where the taxpayer has failed to maintain adequate records as required by section 6001, the Commissioner is authorized to reconstruct the taxpayer's income by any reasonable method that clearly reflects income, including the bank deposits method. See Holland v. United States, 348 U.S. 121, 132-133 (1954); United States v. Hall, 650 F.2d 994, 996 n.4 (9th Cir. 1981) ("The bank deposits method of proof is * * * a circumstantial way of establishing unreported income."). Under the bank deposits method, the Commissioner must show that the taxpayer was engaged in income-producing activities, that he made regular deposits of funds into his bank accounts, and that an adequate and full investigation of those accounts was conducted to distinguish taxable income from nontaxable deposits. United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985). "The critical question is whether the government's investigation has provided sufficient evidence to support an inference that an unexplained excess in bank deposits is attributable to taxable income." Id. at 844-845. When using the bank deposits method, the

[*12] Commissioner assumes a special responsibility of being thorough and particular in his investigation and presentation.  Hall, 650 F.2d at 999 (citing Holland, 348 U.S. at 135-136).

B.    Unreported gross receipts or sales

We find that respondent has met his evidentiary burden to establish that petitioners had unreported income.  Petitioners operated a car sales business in 2006 and 2007 and made regular deposits into their bank accounts.  Furthermore, Agent Lion distinguished taxable income from nontaxable deposits when he subtracted electronic transfers, refunded checks, returned purchases, returned bank fees, sales tax deposits, and rent deposits from gross deposits.  According to his analysis, Agent Lion determined that petitioners underreported their gross sales by $243,184 for 2006 and $73,307 for 2007.

We further conclude, however, that petitioners have established by a preponderance of the evidence that respondent's determination is erroneous as to some portions of their 2006 and 2007 income.  Petitioners argue that the gross sales that Agent Lion determined should be further reduced by funds transferred between petitioners' bank accounts via cash or check.  We agree.

Petitioners argue that Agent Lion double counted some income by not excluding interaccount cash and check transfers.  Petitioners' bank account

[*13] statements reflect a number of transactions which they have shown by a preponderance of the evidence to be interaccount transfers. The rounded amounts of the deposits and the temporal proximity of corresponding withdrawals in identical amounts from one of petitioners' other bank accounts lead us to conclude that these deposits were transfers rather than sales proceeds. At trial Agent Lion testified that he subtracted from gross deposits all amounts which the bank identified as transfers. However, petitioners' bank account statements did not identify transfers made via cash or check as transfers. In addition, Agent Lion's 2006 and 2007 bank deposits analyses did not identify these deposits as transfers. Consequently, we find that $88,500 in 2006 and $35,300 in 2007 are nontaxable deposits.

Petitioners further argue that a bank deposit of $10,000 was proceeds from an AFC loan and thus is not taxable income. Respondent does not dispute that loan proceeds are not taxable income but argues instead that petitioners have failed to identify any evidence of the alleged loan. The record shows that AFC issued a check to petitioners for $10,000 which was deposited in petitioners' bank account ending in 9897 that same day. The record further shows that a copy of the check was maintained with a handwritten note describing the funds as a loan for a Chrysler Pacifica. Thus, petitioners' sole evidence that the $10,000 deposit was a

**[\*14]** loan rather than sales proceeds is a handwritten note, which may or may not have been written in preparation for trial. Given the lack of supporting loan documentation, we find the handwritten note unreliable. Petitioners have failed to show that the $10,000 check from AFC was a nontaxable loan.

II.    Abandoned issues

A.    Issues addressed by respondent but not addressed by petitioners

Respondent submitted a number of issues for decision, which petitioners have not addressed. They are as follows: (1) whether petitioners are entitled to deduct advertising expenses for 2007 in excess of what respondent allowed; (2) whether petitioners are entitled to deduct other expenses for 2007 in excess of what respondent allowed; (3) whether petitioners are entitled to deduct taxes and licenses expenses for 2006 and 2007 in excess of what respondent allowed; (4) whether petitioners are entitled to costs of goods sold for 2005, 2006,[5] and 2007 in excess of what respondent allowed; and (5) whether petitioners are liable for the section 6651(a)(1) addition to tax for 2005. As to the first four issues, respondent's determinations are presumed correct and petitioners bear the burden

---

[5]At trial petitioners submitted a number of receipts for car purchases made in 2006. These receipts total $504,391.61. We note that this is substantially less than the $1,171,665 costs of goods sold deduction that respondent has already allowed.

[*15] of proving otherwise.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) ("'[A]n income tax deduction is a matter of legislative grace and * * * the burden of clearly showing the right to the claimed deduction is on the taxpayer[.]'") (quoting Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943)).  As to the fifth issue, respondent has satisfied his burden, see sec. 7491(c), by producing evidence that petitioners filed their 2005 return nearly a year late.  Consequently, and because petitioners have not advanced any argument in brief as to the foregoing issues, we sustain respondent's determinations.  See Mendes v. Commissioner, 121 T.C. 308, 313-314 (2003) (holding that arguments not addressed in brief may be considered abandoned).

B.    Issues not addressed by either party

Petitioners raised a number of issues at trial which neither party has addressed in posttrial briefs.  These include:  (1) whether Agent Lion failed to subtract from petitioners' 2006 income refunds of $25,506 and $1,900 that petitioners made to customers; (2) whether petitioners are entitled to a deduction for $24,065 of car loan repayments made to Finance & Thrift; (3) whether petitioners are entitled to deductions for payments of $56,805 and $56,891 made on car loans that petitioners assumed upon acquisition; and (4) whether certain

[*16] (unspecified) deposits were nontaxable loans from friends and family. Since neither party has addressed these issues in brief, we deem them abandoned. See Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001) (holding that arguments asserted before filing briefs, but not advanced in brief, are considered abandoned). Further, even if we did not deem these issues to be abandoned, petitioners have failed to carry their burden of proving that respondent's determinations are in error.

III.  Accuracy-related penalties

Petitioners concede that they are liable for the section 6662(a) penalty for 2007 because they were negligent. See sec. 6662(b)(1). Petitioners argue, however, that they are not liable for section 6662(a) penalties for 2005 and 2006 because they were not negligent in those years. Moreover, petitioners claim that it is respondent who was negligent in conducting petitioners' audits.

A.  Respondent's prima facie case

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forth with sufficient evidence to show that imposition of the penalty is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent argues that the section 6662(a) penalty applies because petitioners had been negligent and because petitioners substantially understated

[*17] their income tax. See sec. 6662(b)(1) and (2). Only one accuracy-related penalty may be imposed for a given portion of an underpayment even where that portion implicates more than one form of misconduct. Sec. 1.6662-2(c), Income Tax Regs. Respondent will have met his burden of production if Rule 155 computations show that petitioners had a substantial understatement of income tax. See, e.g., Jarman v. Commissioner, T.C. Memo. 2010-285, 100 T.C.M. (CCH) 599, 602 (2010); Prince v. Commissioner, T.C. Memo. 2003-247, 86 T.C.M. (CCH) 283, 288 (2003). Section 6662(d)(1) defines a substantial understatement as one which exceeds the greater of 10% of the taxpayer's correct liability or $5,000. We further find that petitioners were negligent under section 6662(b)(1) because they failed to keep adequate books and records regarding their auction activities and because they failed to substantiate expenses properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

B.      Reasonable cause under section 6664(c)(1)

Petitioners further argue that the section 6662(a) penalty does not apply because they acted with reasonable cause and in good faith. Once the Commissioner has met the burden of production, the burden shifts to the taxpayer to prove that the Commissioner's determination is incorrect. Higbee v. Commissioner, 116 T.C. at 446-447. An accuracy-related penalty may not be

[*18] imposed where the taxpayer has acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. Whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer's reliance on the advice of a professional, such as a C.P.A., may constitute reasonable cause and good faith if the taxpayer could prove by a preponderance of the evidence that: (1) the taxpayer reasonably believed the professional was a competent tax adviser with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the advising professional; (3) the taxpayer actually relied in good faith on the professional's advice. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also sec. 1.6664-4(c)(1), Income Tax Regs. ("[T]he taxpayer's education, sophistication and business experience will be relevant in determining whether the taxpayer's reliance on tax advice was reasonable and made in good faith.")

We find that petitioners have established reasonable cause and good faith as to $3,000[6] of unreported gross receipts for 2005, which resulted from a slight

---

[6]Petitioners have stipulated this $3,000 of additional sales. See supra note 2.

[*19] discrepancy between petitioners' Federal tax return and State sales tax return.[7]  Mr. Fakhouri, a professional C.P.A. with over 40 years of experience, calculated petitioners' 2005 gross sales using their State sales tax returns, which he testified were "absolutely accurate".  Consequently, and in the light of Mr. Pawar's limited education, we find that their reliance on Mr. Fakhouri's advice as to this $3,000 was justified.

Petitioners, however, have not established that they acted with reasonable cause and in good faith with regard to their 2006 understatement of gross sales. Petitioners admit that they purchased and sold cars at auction but failed to keep any records and thus never provided them to Mr. Fakhouri.  In fact, the record is unclear as to whether before the audits Mr. Fakhouri was even aware of petitioners' auction activities.  Despite Mr. Pawar's limited education, we find that petitioners did not act with reasonable cause and in good faith in failing to maintain records of their auction sales, especially in the light of the fact that Ms. Pawar successfully maintained the requisite records for sales made through their dealership.

---

[7]Respondent did not place into issue whether petitioners had unreported income from their 2005 auction activities.

**[*20]**  Finally, petitioners have not established reasonable cause and good faith with regard to their 2005 and 2006 cancellation of debt income, see supra note 2, because they failed to submit any credible substantiating evidence.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.