**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**John David GARDNER,
Defendant-Appellant.**

**No. 76–1874.**

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1980.

Elliott E. Stanford, Los Angeles, Cal., for defendant-appellant.

Bert H. Deixler, Asst. U. S. Atty., Los Angeles, Cal., argued for plaintiff-appellee; Leonard Sharenow, Los Angeles, Cal., on the brief.

Before ANDERSON and HUG, Circuit Judges, and EAST *, District Judge.

HUG, Circuit Judge:

John David Gardner appeals his conviction on three counts of willfully attempting to evade federal income taxes, in violation of 26 U.S.C. § 7201. The jury found that Gardner had understated his taxable income in each of the years 1968, 1969, and 1970. Gardner raises numerous contentions on appeal, none of which requires reversal of his conviction. We affirm.

I

After Gardner's indictment on three counts of tax evasion, the Government sought to strike a plea bargain with Gard-

---

* The Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

ner. The Government offered to abandon plans to seek a second indictment against Gardner on charges of filing false statements to secure loans and to dismiss two counts of the original indictment if Gardner pleaded guilty to one count of tax evasion and cooperated with the Government in another criminal investigation involving other suspects. Gardner rejected the offer. Subsequently, Gardner was convicted on all three counts of tax evasion, and the Government obtained an indictment against Gardner on the charges of filing false statements. Gardner contends that the Government's threat to obtain the second indictment created an appearance of vindictiveness which impermissibly burdened his rights to stand trial and to refuse to cooperate with the criminal investigation.[1]

In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), a state prosecutor offered to recommend a lenient sentence for a criminal defendant if the defendant agreed to plead guilty to a felony charge. Additionally, the prosecutor threatened to obtain an indictment under a recidivist statute, which carried a heavier penalty than the original charge, if the defendant chose to stand trial. The Supreme Court held that, so long as the defendant was free to accept or reject the offer, the prosecutor could lawfully present the defendant with the alternatives of pleading guilty or facing charges on which he was plainly subject to prosecution. *Id.* at 363–65, 98 S.Ct. 663.

▪ Gardner does not assert that the Government had no probable cause to prosecute him on the charges of filing false statements, and it is clear that Gardner was free to accept or reject the offer proposed by the Government in plea bargaining. Consequently, in light of *Bordenkircher*, we must reject Gardner's contention that the Government's offer unlawfully impinged upon Gardner's right to plead not guilty and stand trial. *See id.* Similarly, the

Government could lawfully seek to induce Gardner to cooperate in another criminal investigation. *Cf. United States v. Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979) (offer by prosecutor to drop charges against witness in exchange for testimony against codefendant).

## II

During pretrial proceedings, Gardner moved to dismiss the indictment on the ground, *inter alia*, that the Government had obtained evidence against him through the use of illegal electronic surveillance. Gardner supported his allegations with affidavits submitted by one Darthard Perry, a one-time paid informant for the Federal Bureau of Investigation. Those affidavits stated that Gardner was under frequent electronic surveillance by federal authorities. In response, the Government produced the affidavit of F.B.I. Agent Stephen Moss, which stated that the records of the Washington, D.C. headquarters and two field offices of the F.B.I. indicated that Gardner had not been the subject of electronic surveillance. Moss had personally checked the records of one field office and had obtained reports from the other offices. In addition, the Government communicated to the court the statement of a member of the Department of Justice, Tax Division, that each of six federal agencies had reported that it had not conducted electronic surveillance of Gardner.

The trial court initially criticized the Government's response for lack of specificity in Moss's affidavit and for the Government's failure to produce an affidavit from the agent who personally checked the F.B.I. records at the Washington, D.C. headquarters. However, the court denied the motion to dismiss without prejudice to its renewal after trial. Upon renewal of the motion to dismiss after trial, the court accepted the Government's denial of electronic surveil-

---

1. To the extent that Gardner seeks dismissal of the second indictment on grounds of vindictive prosecution, that relief is properly sought before the court trying the charges for filing false statements, a separate case. Because we find that Gardner's rights were not violated, we need not consider what relief could be granted in this case if the Government had acted improperly during the course of plea bargaining.

lance and denied Gardner's motion. Gardner contends that the Government inadequately negated his allegations of illegal surveillance, warranting reversal of the conviction.

■ Upon a preliminary showing by a criminal defendant that he was the victim of illegal electronic surveillance, the prosecution must unequivocally affirm or deny the use of such surveillance. *See* 18 U.S.C. § 3504(a)(1); *United States v. Alter,* 482 F.2d 1016, 1026–27 (9th Cir. 1973). However, a general or unsupported claim by the defendant requires only a response appropriate to that claim. *See United States v. See,* 505 F.2d 845, 856 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). The specificity of the prosecution's denial and the comprehensiveness of the search on which the denial is predicated must be measured against the specificity of the allegations of unlawful electronic surveillance and the strength of the support for those allegations. *See United States v. Alvillar,* 575 F.2d 1316, 1321 (10th Cir. 1978); *United States v. See,* 505 F.2d at 856 n. 18.

■ Perry's affidavits, the chief support for Gardner's allegations, were thoroughly impeached by testimony taken at hearings on the motions to dismiss and at trial.[2] In light of the general nature of Gardner's allegations and the failure to provide substantial support for those allegations, the Government's denial of electronic surveillance was adequate. Absent a stronger showing by Gardner, first-hand inspection of the F.B.I. records by the Government's affiant was not required; the information received by Moss and stated in his affidavit was sufficient. *See United States v. Yanagita,* 552 F.2d 940, 945 (2nd Cir. 1977); *In re Weir,* 495 F.2d 879, 881 (9th Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974). The district court properly accepted the Govern-

ment's denial of Gardner's allegations of electronic surveillance.

## III

During the trial, Gardner directed a general request to the Government to produce "all evidence within the Government's knowledge or possession which may be favorable to the accused and is material to either guilt or punishment." The trial court made a similar request. In response, the Government submitted to the court for *in camera* inspection the excised portions of two documents and the full text of several other documents. The Government had determined that the matter submitted to the court contained information that was potentially material to the issue of the credibility of Government witnesses. After review, the district court turned a single document over to the defense; the court concluded that the remaining information was insufficiently material to require disclosure.

On appeal, Gardner does not assert that he has discovered specific, exculpatory evidence improperly suppressed by the Government. Rather, he contends that the procedure adopted by the Government and approved by the district court inadequately protected his constitutional rights.

■ The prosecution may not suppress exculpatory evidence that is material to the issue of guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In a case in which a general request for exculpatory evidence is made, the test for materiality is whether the suppressed evidence "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).

■ In response to a request for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's

---

**2.** Perry's own testimony was inconsistent with key statements in his affidavits. In evaluating Gardner's showing of electronic surveillance and the Government's response, we give greater weight to the testimony, which was subject

to cross examination, than to the affidavits. *See Matter of the Grand Jury,* 524 F.2d 209, 216 (10th Cir. 1975), *cert. dismissed,* 425 U.S. 927, 96 S.Ct. 1526, 48 L.Ed.2d 170 (1976).

decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. *See Agurs*, 427 U.S. at 108–112, 96 S.Ct. 2392. If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation. *See id.* at 106, 96 S.Ct. at 2399 (prosecutor may respond to specific request by "submitting the problem to the trial judge."); *United States v. Ross*, 511 F.2d 757, 765 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

■ In this case, the Government properly submitted to the trial court for *in camera* evaluation only those documents or portions of documents that it determined were arguably subject to disclosure under *Brady* and *Agurs*; sensitive information not meeting that standard could be deleted or withheld. We reject Gardner's assertion that the excision of portions of two of the submitted documents indicates that the deleted portions contained material, exculpatory information. The court was in a position to determine whether it needed to see the excised portions of documents in its *in camera* inspection in order to make a proper evaluation. Absent a more concrete showing that the Government improperly suppressed material evidence, we find no reversible error in the procedure utilized by the district court. *See United States v. Frazier*, 394 F.2d 258, 262 (4th Cir.), *cert. denied*, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968).

## IV

To establish that Gardner had reported less than his total income, the Government employed the "net worth and expenditures method" of estimating taxable income. Gardner contends that the evidence presented by the Government was insufficient to support his conviction for willful attempt to evade income taxes. In particular, Gardner argues that the Government's evidence was speculative and error-prone, that the element of willfulness was inadequately established, and that the admission into evidence of a chart summarizing the Government's case was unduly prejudicial.

■ The net worth method of establishing taxable income may be employed if the prosecutor (1) accurately establishes the defendant's opening net worth, (2) identifies a likely source of taxable income from which it may be inferred that the defendant's increase in net worth arose, and (3) conducts a reasonable investigation of any leads that suggest that the defendant properly reported his income. *See Holland v. United States*, 348 U.S. 121, 130–38, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Hom Ming Dong*, 436 F.2d 1237 (9th Cir. 1971). The prosecution must prove "every element of the offense beyond a reasonable doubt though not to a mathematical certainty." *Holland*, 348 U.S. at 138, 75 S.Ct. at 137. A case involving the use of the net worth method should be carefully reviewed on appeal. *Id.* at 129, 75 S.Ct. 127. Nonetheless, we must uphold the verdict of the jury if, viewing the evidence in the light most favorable to the Government, there is relevant evidence from which the jury could reasonably have found Gardner guilty beyond a reasonable doubt. *See United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979).

■ The requirements of *Holland* were met in this case. The Government adequately established defendant's opening net worth for each tax year, and it identified various business firms, with which Gardner was associated, as likely sources of unreported taxable income. There is no evidence that the Government failed to investigate leads that suggested Gardner's innocence.

The evidence upon which Gardner ultimately was convicted showed that Gardner owed significantly less in delinquent taxes than the amount charged in the indictment. However, this discrepancy was due chiefly to the Government's decision during the trial to credit certain defense testimony relating to tax liability and to adjust its estimate of taxable income accordingly. We have reviewed Gardner's assertions that the

Government's calculations were "error-prone," and we find that the Government's proof based on the "net worth and expenditures method" was not subject to a sufficient margin of error to undermine the support for the jury's verdict. *Cf. United States v. Keller*, 523 F.2d 1009, 1012 (9th Cir. 1975) (proof of tax evasion not upset by allegations of minor errors in Government computation).

■■■ The element of willfulness may be inferred by the jury from evidence of a consistent pattern of underreporting large amounts of income. *United States v. Vannelli*, 595 F.2d 402, 405 (8th Cir. 1979); *see Keller*, 523 F.2d at 1011; *Holland*, 348 U.S. at 139, 75 S.Ct. 127. After adjustment in light of defense testimony, the Government's evidence indicated that Gardner had underreported more than $10,000 in taxable income in each of three successive years for a total of more than $60,000 in unreported taxable income over a three-year period. The jury could reasonably infer from this evidence that Gardner had willfully attempted to evade his income taxes.

■■■ Finally, we reject Gardner's contention that the defense was unduly prejudiced by the Government's use of a chart summarizing the assets, liabilities and expenditures of the appellant. The Government initially employed the chart as a testimonial aid for a Government witness. The Government witness who presented the chart was examined and cross-examined extensively with respect to the sources of the figures on the chart. The chart was a summary of facts and calculations which were in evidence. There was no objection

to the utilization of the chart at the time the witness testified. The use of the chart in court contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence. It was well within the discretion of the court to permit this use pursuant to Fed.R.Evid. 611(a). Having thus utilized the chart without objection with a full opportunity for the defendant to challenge the facts, figures, calculations and underlying documents upon which the chart was based, it was not reversible error to admit the chart in evidence. *See United States v. Johnson*, 460 F.2d 20, 22 (9th Cir. 1972). *See generally* Fed.R.Evid. 1006; 5 Weinstein's Evidence ¶ 1006[01], at 1006–2–1006–4.1 (1978).[3]

## V

At trial, Internal Revenue Service Agent Caesar Cantu was examined with respect to the second of two investigatory interviews with Gardner. At one point the witness testified, "Mr. Gardner wanted to ask me something but he wasn't sure in what areas he would incriminate himself if he began . . . ." Defense counsel immediately moved for a mistrial. The district court denied the motion but ordered the statement stricken from the record on the ground that it constituted an inadmissible conclusion on the part of the witness with respect to another's state of mind. In addition, the court admonished the jury that the statement was

> totally and entirely irrelevant and immaterial to any issue in this case and should not be considered by you in any way in

**3.** Gardner relies on this court's decision in *Lenske v. United States*, 383 F.2d 20 (9th Cir. 1967). In *Lenske*, however, the accuracy of the chart used by the Government was vigorously and effectively challenged, and the use of the chart was only one of several factors contributing to the court's decision to reverse the conviction. This court in *United States v. Abbas*, 504 F.2d 123 (9th Cir. 1974), *cert. denied*, 421 U.S. 988, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975), stated that the better practice was to use the charts as a testimonial aid for witnesses and as a visual aid for counsel in argument, but not to submit the charts to the jury. However, the

court found no reversible error where the defense had a full opportunity to cross examine the witness who testified relative to the charts, to indicate any errors in the charts and to present any similar demonstrative evidence in presentation of the defense case. A limiting instruction was also given in *Abbas*. Although the defendant in the present case objected to the chart being admitted in evidence and going to the jury, the record does not disclose whether any limiting instruction was sought or given, and such an instruction was not essential to preclude reversible error in this case.

your deliberations and considerations of the factual issues of this case.

Gardner contends that the court's admonition did not cure the prejudicial effect of the stricken testimony, and that the court erred in denying his motion for a mistrial.

 The trial court is in the best position to determine whether an incident merits a mistrial. *United States v. Nace*, 561 F.2d 763, 768 (9th Cir. 1977). We will not overturn the trial court's denial of a motion for a mistrial unless the defendant can show an abuse of the court's discretion. *Tisnado v. United States*, 547 F.2d 452, 460 (9th Cir. 1976). The stricken testimony in this case was not highly prejudicial. The court's admonition to the jury to disregard the statement was adequate to protect Gardner's right to a fair trial. We find no abuse of the court's discretion in denying the motion for a mistrial.

### VI

Gardner complains that Agent Cantu failed to advise Gardner of his constitutional rights before each of the two noncustodial investigatory interviews conducted by Cantu. Gardner did not move the trial court to suppress evidence obtained from these interviews. Rather, he argues on appeal that Cantu's failure to give proper warnings, when viewed in combination with the trial court's denial of Gardner's motion for a mistrial, resulted in "reversible error," presumably by denying Gardner a fair trial.[4]

 There is no constitutional requirement that the warnings outlined in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1967), be given to a taxpayer before a noncustodial interview conducted by an agent of the IRS in connection with a criminal tax investigation.

*Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Published procedures of the IRS, however, require agents to give similar warnings at the initial meeting with the taxpayer in a criminal tax investigation:

> At the initial meeting with a taxpayer, a Special Agent is now required to identify himself, describe his function, and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding.

*United States v. Sourapas*, 515 F.2d 295, 297 n.2 (9th Cir. 1975) (quoting from IRS News Release IR–949 (November 26, 1968)). In unusual circumstances, a failure of the IRS substantially to comply with the requirements of this published procedure might provide grounds for the suppression of the fruits of the improperly conducted interview. *See United States v. Caceres*, 440 U.S. 741, 755–57, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).[5]

 We find that Cantu substantially complied with IRS procedures. At the initial interview with Gardner, Cantu gave Gardner all of the required warnings except that one relating to the right to seek the assistance of counsel. Because Gardner was accompanied by his attorney at each interview, Cantu's failure to advise Gardner of the right to seek counsel is inconsequential. *See United States v. Morse*, 491 F.2d 149, 156 (1st Cir. 1974) (compliance with substance and spirit of procedure is adequate).

Cantu did not repeat the warnings before his second interview with Gardner. How-

---

4. In arguing that these factors combine to constitute reversible error, Gardner asks this court to consider as well his counsel's failure to conduct a *voir dire* examination of Cantu to determine whether Cantu gave the proper warnings. Gardner does not specify how he was prejudiced by this omission. In any event, this complaint is more appropriately considered in con-

junction with Gardner's contention that he was deprived of the effective assistance of counsel.

5. In *Caceres*, the Supreme Court reversed this court's decision in *United States v. Caceres*, 545 F.2d 1182, 1187 (9th Cir. 1976), and rejected a more rigid rule of exclusion first adopted by this court in *United States v. Sourapas*, 515 F.2d 295 (9th Cir. 1975).

ever, the IRS published procedure requires only that the warnings be given at the initial interview. *See generally United States v. Mathews,* 464 F.2d 1268, 1270 (5th Cir. 1972). Particularly in light of the fact that Gardner was accompanied by counsel at both interviews, Cantu's statement of rights at the first interview was adequate.

We conclude that Cantu's actions did not result in reversible error, whether they be viewed independently or in combination with other aspects of the trial.

### VII

Finally, Gardner contends that he was denied his right under the Sixth Amendment to representation by effective counsel. Gardner asserts that his trial counsel was guilty of numerous omissions in the investigation and trial of his case.

As a criminal defendant, Gardner enjoyed the right to "reasonably competent and effective representation." *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). The omissions that Gardner attributes to his counsel either are inconsequential or are related to reasonable tactical decisions necessitated by the limits on time and resources associated with any litigation. Although another attorney might have tried the case differently, and perhaps more skillfully, we conclude that Gardner's counsel provided reasonably competent and effective representation satisfying the requirements of the Sixth Amendment.

### VIII

The judgment of the district court is affirmed.