**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**TULAFONO SOLAITA, Defendant**

High Court of American Samoa
Trial Division

CR No. 27-94

October 21, 1994

---

[1] This case also raises the question of the date from which a malpractice cause of action--the date of the trial court's judgment of dismissal, or the date on which judgment was affirmed on appeal. We need not decide this issue at this time; even using the latter date, plaintiff's filing is still one day beyond the applicable two-year limitations period.

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Henry W. Kappel, Assistant Attorney General
For Defendant, William H. Reardon

Order Denying Motions for Mistrial:

Defendant Tulafono Solaita is on trial for charges brought by plaintiff American Samoa Government ("the government") consisting of two counts of felony stealing, two counts of embezzlement, and three counts of forgery.

On September 29, 1994, during the government's rebuttal evidence, defendant twice moved for a mistrial. The court took these motions under advisement. At the conclusion of final arguments, the court took the entire case under advisement. On September 30, 1994, defendant filed a written motion for a mistrial, supplementing his earlier oral motions. A further hearing on the motions was held on October 7, 1994, with defendant and both counsel present.

10

Today, the court is making a general finding that defendant is not guilty of all counts. Ordinarily, this decision would obviate any need to rule on the motions for a mistrial. However, the court will use this opportunity to discuss significant issues raised by defendant's motions. Thus, we will formally deny his motions for a mistrial before issuing our general finding.

## GROUNDS FOR A MISTRIAL

Defendant has based his motions for a mistrial on discovery issues. He claims that he was unfairly prejudiced by the government's (1) unreasonable delay in providing him with a questioned document examiner's report and (2) failure to disclose to him two witnesses' identities before their rebuttal testimony.

## RELEVANT FACTS

On September 8, 1994, a U.S. Secret Service questioned documents examiner completed a report for documents relevant to this case. On September 12 or 13, while here on a police training mission, the examiner gave his report to the government's chief investigator, who in turn gave it to the government's counsel on September 14 or 15. The report was transmitted by facsimile to defendant's counsel on September 16, and again on September 19, when defendant's counsel first saw it. The examiner left the territory on September 18. Defendant objected on the ground that he was deprived of an opportunity to speak with the examiner regarding the report while the examiner was here.

Defendant also objected to the introduction of testimony by two undisclosed rebuttal witnesses. The first witness, a staff member of the government's development planning office, refuted defendant's denial or lack of recollection of personal knowledge of a letter concerning problems with an indirectly relevant federal grant. The second witness, the accounts payable manager at the government's department of treasury, testified to the procedures involved in the preparation of the government's purchase orders and having personally seen the purchase order, the government's "exhibit 5," prepared in her office and, elicited on defendant's cross examination, signed by defendant, who had denied signing this document. Although the accounts payable manager was subpoenaed before defendant testified, the government did not notify defendant of the names and addresses of these witnesses before either one

11

testified in rebuttal.[1] Thus, defendant did not have opportunity to interview these witnesses prior to their testimony in this rebuttal role.

## DETERMINATION CRITERIA

■ Mistrial issues are usually fact intensive, and, therefore, are largely within the trial court's discretion. *United States v. Sanford*, 673 F.2d 1070, 1073 (9th Cir 1982); *United States v. Gardner*, 611 F.2d 770, 777 (9th. Cir. 1980). A mistrial is a last resort and should not be declared absent a showing of a "high degree" of necessity, or "manifest necessity." *Arizona v. Washington*, 434 U.S. 497, 505-07 (1978); *United States v. Starling*, 571 F.2d 934, 937 (5th Cir. 1978). In granting a mistrial, a trial court must explicitly find no reasonable alternatives. *United States v. Grasso*, 552 F.2d 46, 52-53 (2d Cir. 1977).

■ Failure to disclose, or late disclosure of, evidence is prejudicial when the evidence would provide a significant chance of establishing a reasonable doubt that would not otherwise exist. *United States v. Agurs*, 427 U.S. 97, 112, 49 L. Ed. 2d 342, 354-55 (1975); *United States v. Rhodes*, 713 F.2d 463, 471 (9th Cir. 1983); *United States v. Gardner*, 611 F.2d 770, 774 (9th Cir. 1980). The prosecution need not disclose every piece of potentially exculpatory evidence, unless such evidence meets this test for materiality. *Agurs*, 427 U.S. at 109-10; *Gardner*, 611 F.2d at 774-75. The materiality test is more rigorous and difficult for the defense than the customary "harmless error standard." *Agurs*, 427 U.S. at 112.

## DISCUSSION

*1. The Questioned Document Report*

Under T.C.R.Cr.P. 16(a)(1)(D), defendant was clearly entitled to inspect and copy, and did receive, the questioned document examiner's report. However, he urges that the government's late production of the questioned document report infringed upon his right to a fair trial. The report itself is inconclusive as to his guilt or innocence. Nonetheless, defendant argues that the delay deprived him of an opportunity to discuss the report with the

---

[1] The accounts payable manager also testified during the government's case-in-chief, but only as the custodian of official forms containing specimens of authorized signatures and initials for the government's procurement process. Defendant was notified before trial that the government planned to call various, unnamed record custodians.

examiner and potentially discover exculpatory material which he has a right to examine under *Brady v. Maryland,* 373 U.S. 83 (1963).

■ To establish a *Brady* violation, a defendant must demonstrate that the prosecution suppressed evidence that was favorable to the defense or exculpatory and was material. *United States v. Blasco,* 702 F.2d 1315, 1327 (11th Cir. 1983). It is not clear that defendant would have elicited any additional exculpatory information if he had been given the chance to speak with the examiner in person. Defendant argues that he could not know how the lost opportunity might have resulted in prejudice without knowing what the examiner might have told him. Potential prejudice alone, however, is not grounds for a mistrial. The *Agurs* court enunciated the principle that suppression of a mere possibility does not deprive a defendant of due process of law.

> The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.

*Agurs,* 427 U.S. at 109-10. A defendant must show a "significant chance" that the evidence suppressed by the government would have produced a "reasonable doubt" as to the guilt. *Id.* at 112.

Defendant shows no more than a "mere possibility" of prejudice, since he cannot establish what the examiner might have revealed if his counsel had interviewed the examiner. Defendant had a copy of the report at least eight days prior to trial. In those eight days, and during the trial, defendant did not seek a telephonic deposition, make any other effort to interview the examiner, or move for a continuance for this purpose. Defendant failed to pursue any alternative, prior to or during trial, which might have provided other explanations of the report more favorable to him and established genuine prejudice.

Defendant encourages the court to declare a mistrial as a deterrent to the suppression of evidence by the government. This court has no evidence of bad faith by the government, other than a possible inference from the delay in transmitting the report. However, we would not infer this fact without more evidence and are not required to consider it in the absence of any showing of actual prejudice. Prosecutorial bad faith is not enough, by itself, to deprive a defendant of a fair trial without a showing that the suppressed evidence meets the materiality test. At issue is the character of the suppressed evidence, not the prosecutor's character:

13

> Nor do we believe the constitutional obligation is measured by the moral culpability, or the wilfulness of the prosecutor. If evidence highly probative of innocence is in his·file, he should be presumed to recognize its significance even if he has actually overlooked it. Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.

*Agurs*, 427 U.S. at 110 (citations omitted).

### 2. The Rebuttal Witnesses

■ Defendant claims that he was denied a fair trial because of the surprise testimony of the government's undisclosed rebuttal witnesses. Defendant asserts that these witnesses' testimony was not responsive to any testimony elicited by the defense and that the witnesses were called in rebuttal merely to avoid pretrial discovery. However, we do not need to consider the propriety of calling these witnesses in rebuttal, since their identities are not freely discoverable in any event.

In 1970, the drafters of amendments to F.R.Cr.P. 16 proposed to require discovery of witness identities by both parties, but the U.S. Congress decided to the contrary. Charles A. Wright, 2 FEDERAL PRACTICE AND PROCEDURAL, CRIMINAL § 251 at 33 (West, 2d ed.).

> C. Rules 16(a)(1)(E) and (b)(1)(C) (witness lists).
>
> The House version of the bill provides that each party, the government and the defendant, may discover the names and addresses of the other party's witnesses 3 days before trial. The Senate version of the bill eliminates these provisions, *thereby making the names and addresses of a party's witnesses nondiscoverable.* The Senate version also makes a conforming change in Rule 16(d)(1). The Conference adopts the Senate version.
>
> A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and

14

addresses of its witnesses before trial. Discouragement of witnesses and improper contact directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy.

U.S.C.S. Rules of Criminal Procedure, Rule 16, Notes of Conference Committee on 1975 Amendments to Rules (House Report No. 94-414) (emphasis added).

Under the federal rules enacted by Congress, defendant's position was explicitly rejected. Since T.C.R.Cr.P. 16 is patterned after the federal rule, with little variation, we see no reason to adopt defendant's position.

Defendant further argues that American Samoa is an "open discovery" jurisdiction because of local attorneys' long standing practice in criminal cases to fully disclose prosecution evidence to defense counsel. Defendant argues that this long standing practice led to his expectation that open discovery would take place, resulting in unfair surprise when the undisclosed rebuttal witnesses were sworn.

As a matter of policy, this court encourages opposing counsel to cooperate with one another, whenever possible, to facilitate fair and orderly criminal proceedings. However, if the court compels prosecutors to provide the names and addresses of witness just because they have voluntarily provided this information in the past, we would instill a chilling effect on prosecutors, making them wary of cooperation in any case lest they lose their power of choice under T.C.R.Cr.P. 16 or any other rule in future cases. Rule 16 intentionally and reasonably gives prosecutors the flexibility to protect witnesses when necessary.

Defendant's argument that the disclosure of some witnesses misled him to believe that the government had disclosed all of its witnesses is similarly misguided. By granting a mistrial this premise, the court would discourage prosecutors from ever voluntarily disclosing any witness, lest they mistakenly or deliberately omit another witness and subject the case to a mistrial.

### 3. Impeachment by Nolo Contendere Pleas

Although defendant objected to the introduction of his two prior convictions based on pleas of *nolo contendere* for purposes of impeachment, he did not pursue this issue in his motions for a mistrial. However, the court is troubled that the government produced this evidence

15

and will consider it in this discussion.

The principle at issue is substantively set forth in similar manners in both T.C.R.Ev. 410 and T.C.R.Cr.P. 11(e)(6). T.C.R.Ev. 410 reads, in relevant part: "Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in plea discussions . . . (2) a plea of *nolo contendere* . . ."

■ Applying this rule, the government acted improperly per se in introducing defendant's two prior convictions.

■ A plea of *nolo contendere* is recognized as having no effect beyond the action in which it is entered and no evidentiary value as an admission of guilt. Spencer A. Gard, JONES ON EVIDENCE § 13:44 at 510-12 (6th ed. 1972) (explaining F.R.Ev. 410, which T.C.R.Ev. 410 mirrors). Moreover, T.C.R.Ev. 803(22) prohibits the use of a judgment based on a *nolo contendere* plea in any action under a hearsay exception. *Id.* (explaining F.R.Ev. 803(22), which T.C.R.Ev. 803(22) mirrors). A *nolo contendere* plea is provided for the purpose of facilitating compromise in the plea bargaining process by allowing the accused to avoid an admission of guilt and the attendant evidentiary impact of that admission in potential future proceedings. U.S.C.S. Federal Rules of Evidence, Rule 410, Notes of Advisory Committee on Rules.

■ While it is a clear application of T.C.R.Ev. 410 that the government's use of two former convictions by *nolo contendere* pleas was improper impeachment, a mistrial is still out of order. As previously stated, a mistrial is a last resort remedy and should only be granted when there is no other available sanction. *United States v. Grasso*, 552 F.2d 46, 52-53 (2d Cir. 1977).

In a similar case, where a police officer had improperly testified that the defendant had been convicted of attempted murder, the Tenth Circuit upheld the trial court's decision to strike the testimony from the record and instruct the jury to disregard it, rather than granting the defendant's motion for mistrial. *United States v. Trujillo*, 578 F.2d 285, 286-87 (10th Cir. 1978). A trial court should use its power to declare a mistrial with "the greatest caution" and in a trial by jury, an instruction to disregard inadmissible evidence is generally "sufficient to cure any prejudice to the defendant." *United States v. Escalante*, 637 F.2d 1197, 1202-03 (9th Cir. 1980). This procedure is the "preferred alternative" unless "there has been so much prejudice that an instruction is unlikely to cure it." *Id.* This

16

court is not prejudiced by having heard the evidence of the prior convictions and, accordingly, will disregard them in considering the force of defendant's testimony. We strike and will disregard the evidence of defendant's two prior convictions resulting from pleas of *nolo contendere*. In all other respects, the motions for a mistrial are denied.

It is so ordered.