53 F.3d 340
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Frank L. BECKY, Defendant-Appellant.
 No. 94-30101.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1995.
Decided April 26, 1995.
 
 Before: SKOPIL, HALL, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTUAL BACKGROUND
 
 2
 Frank L. Becky owned 49% of the stock of B. and B. Properties. Tony's Lounge, a restaurant and casino, was wholly owned by Max and Barbara Burner, but Morris Burner and Becky shared in the receipts. A single-count indictment charged that Becky, with his partners Max and Morris Burner, covertly skimmed gambling receipts and other cash transactions of the two businesses and filed tax returns that did not reflect the skimmed amounts, thereby violating 18 U.S.C. Sec. 371 by conspiring to defraud the United States by impeding, impairing, obstructing and defeating the I.R.S. in the ascertainment, computation, assessment, and collection of income taxes.[1]
 
 
 3
 Only Becky actually stood trial; Max and Morris Burner pled guilty and testified at Becky's trial. Becky was convicted and sentenced to eleven months' incarceration and one year's supervised release. He was also ordered to pay a $50,000 fine. Becky appeals the conviction and sentence. Notice of appeal was timely filed, and this court has jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 DISCUSSION
 
 4
 I. FAILURE TO INSTRUCT ON AN ESSENTIAL ELEMENT
 
 
 5
 Becky requests reversal of his conviction because the court did not instruct the jury that, to convict him, it needed to find that the agreed-upon obstruction of a lawful function of government was to be brought about "by deceitful and dishonest means."[2] Deceitful or dishonest means are an essential element of a section 371 violation. United States v. Caldwell, 989 F.2d 1056, 1059 (9th Cir. 1993) (reversing the conviction where the court refused to instruct on the element of "deceitful or dishonest means"). Without that element, many sorts of presumptively legal conduct could be grounds for prosecution because the conduct happens to impede or obstruct a lawful government function. See id.
 
 
 6
 Becky never objected to the court's failure to instruct the jury on that element, as Becky was required to do under Fed. R. Crim. P. 30 to preserve the issue for appeal.[3] We therefore review only for plain error. Fed. R. Crim. P. 52(b); United States v. Whitmore, 24 F.3d 32, 34 (9th Cir. 1994). To obtain reversal for plain error, there must be (1) an error (2) that is "plain" and (3) that affects "substantial rights," which means "the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." United States v. Olano, 113 S. Ct. 1770, 1777-78 (1993).
 
 
 7
 In Becky's case, there was certainly error, and it was "plain" because it was "clear under current law" (i.e., Caldwell) at the time the district court instructed the jury. See Whitmore, 24 F.3d at 35 (citing Olano, 113 S. Ct. at 1777). However, the error could not have affected the outcome of the proceeding, because the jury necessarily found that Becky had used or agreed to use dishonest or deceitful means.
 
 
 8
 In most cases, failure to instruct on an essential element of the crime cannot be harmless, because "it lets [the jury] convict without finding the defendant guilty of that element," thereby violating the Sixth Amendment's requirement that "all elements of the crime be found by the jury -- not just by appellate judges reviewing the record." Caldwell, 989 F.2d at 1060-61. However, this court has previously deemed the omission of an element harmless where the jury's determination of guilt on another substantive count served as the functional equivalent of a finding of the omitted element. See United States v. Shabani, 993 F.2d 1419, 1422 (9th Cir. 1993), rev'd on other grounds, 115 S. Ct. 382 (1994).[4] Therefore, the omission of an element is harmless if it is logically impossible for a jury following the court's instructions to convict without finding that the missing element was met.
 
 
 9
 Such was the case here. The jury was instructed that, in order to convict Becky, it had to find "that there was a plan to commit the crime alleged in the indictment by the manner and means alleged in the indictment as an object of the conspiracy." The indictment had been read to the jury. It stated:
 
 
 10
 MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT
 
 
 11
 The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:
 
 
 12
 Frank L. BECKY, Max D. BURNER and Morris BURNER covertly skimmed gambling receipts and other cash transactions of B. and B. Properties, Inc. and Tony's Lounge, Inc. and diverted said corporate receipts to their own use. To conceal said skim Frank L. BECKY, Max D. BURNER and Morris BURNER caused to be filed with the Internal Revenue Service corporate returns for Tony's Lounge, Inc. and B. and B. Properties, Inc. which did not report the amounts skimmed from the gambling receipts and other cash transactions of these corporations.
 
 
 13
 No other manners or means are listed. Therefore, to convict Becky, the jury must have found that he filed false tax returns in order to conceal skimmed monies. This conduct is, by definition, dishonest and deceitful, and the jury's ultimate finding of guilt therefore includes a finding of "dishonest or deceitful means." On the facts of this case, failure to instruct more specifically on that element was harmless beyond a reasonable doubt.
 
 II. THE SUPPLEMENTAL JURY INSTRUCTION
 
 14
 Becky contends that the court violated Fed. R. Crim. P. 30[5] by delivering a supplemental instruction on the nature of the agreement required for conspiracy. Becky does not challenge the legal soundness of the instruction. Rather, he argues that its timing, and the court's failure to notify counsel before closing argument that it intended to read the supplemental instruction, violated Rule 30. We do not agree.
 
 
 15
 In advance of closing argument and before instructing the jury, the court met with counsel and disclosed the court's proposed draft of instructions.
 
 
 16
 In closing argument, defense counsel stressed the government's failure to establish the existence of a verbal agreement. The court then instructed the jury consistently with its proposed instructions, which it had previously reviewed with counsel. The instruction on conspiracy warned that no "formal agreement" was necessary for conspiracy, no "writing" was necessary, and "[t]he terms need not be expressly agreed on." At side-bar, the defense asked the court to clarify to the jury that conspiracy required a verbal agreement. The court refused to modify its proposed instructions in the defense's favor. Subsequently, just before sending the jury to deliberate, the court instructed the jury as follows:
 
 
 17
 Members of the jury, by way of a further supplemental instruction to you concerning the agreement that is necessary to constitute a conspiracy, it is not necessary that there be an express, verbal agreement. It is not necessary that there be an express agreement in writing. It is sufficient for the conspiracy to exist that there is an understanding between and among the conspirators to accomplish the unlawful plan or illegal act which is the object of the conspiracy.
 
 
 18
 The defense immediately objected. Becky now argues that the supplemental instruction, given after closing argument and with no prior notice, eviscerated his defense. As a result, he claims, "counsel's closing argument was based upon a theory of defense which the court rejected, or at least ignored, in its subsequent instructions.... impair[ing] the effectiveness of counsel's argument and hence of appellant's defense." Wright v. United States, 339 F.2d 578, 580 (9th Cir. 1964) (reversing because of the court's instructions' prejudicial effect on counsel's summation).
 
 
 19
 Becky's Rule 30 argument must fail. The court's supplemental instruction was different in emphasis, but not in substance, from the previously-given instructions on which defense counsel claims to have relied. Furthermore, any reliance on the exact wording of the court's proposed instructions was unjustified in light of the following admonition, which the court delivered to the attorneys in the conference in which the court disclosed its proposed instructions:
 
 
 20
 Now, I might add to that that because the court has prepared this draft does not mean that I'm committing to you to read this verbatim to the jury. And I admonish counsel not to read to the jury any instruction here and rely on it being actually given by the court, because your arguments will come prior to the court's instructions and because the court may paraphrase or may in fact alter an instruction in light of the argument of the parties and the law.
 
 
 21
 Therefore, the court hardly "allow[ed] defense counsel to proceed with closing argument under the mistaken assumption that the jury will receive a certain instruction." United States v. McCown, 711 F.2d 1441, 1452 (9th Cir. 1983). Any prejudice resulting from the supplemental instruction was defense counsel's own fault for relying on a mistaken theory of law that had already been explicitly rejected by the court. We will not reverse because the court foiled defense counsel's attempt to mislead the jury on the law.
 
 III. THE MOTION TO SUPPRESS
 
 22
 Becky appeals the trial court's denial of his motion to suppress the fruits of three interviews of him conducted by I.R.S. Special Agent Crebo. We hold that the motion to suppress was properly denied.
 
 
 23
 Prior to Becky's March 19, 1993 indictment, Crebo met with Becky on July 9, 1987, on August 22, 1987, and on October 28, 1988. Crebo also contacted Becky a number of other times to set up the meetings and to serve a summons for the third one. Becky was not advised of his rights during any of the contacts. Statements from all three meetings were eventually used at Becky's trial.
 
 
 24
 This court reviews de novo whether a defendant was given adequate pre-interrogation warnings. United States v. Connell, 869 F.2d 1349, 1351 (9th Cir. 1989). There is no constitutional requirement that Miranda warnings be given to a taxpayer prior to a non-custodial interview conducted by an I.R.S. agent in connection with a criminal tax investigation. Beckwith v. United States, 425 U.S. 341 (1976); United States v. Gardner, 611 F.2d 770, 777 (9th Cir. 1980). However, internal I.R.S. procedures require, first, that "subjects" of criminal investigations be advised of their rights, and, second, that all witnesses be informed of the right to consult with counsel if the witness inquires about such a right.[6] Under "unusual circumstances," a "substantial deviation" from the requirements of the I.R.S.'s published procedure "might" provide grounds for suppression of the fruits of the improperly conducted interviews. Gardner, 611 F.2d at 777. However, absent a substantial deviation and unusual circumstances, the remedy of suppression of evidence is not available for violations of administrative procedures that do not constitute statutory or constitutional violations. United States v. Caceres, 440 U.S. 741, 754-55 (1979).
 
 
 25
 Becky makes three arguments to justify suppression of his statements. First, Becky argues that, contrary to the trial court's finding, he was the subject of an investigation, and internal I.R.S. procedures required that he be advised of his rights. Second, he claims that his right to counsel was denied at the second meeting. Third, he claims that the third meeting amounted to a custodial interrogation, requiring a Miranda warning. None of these arguments is persuasive.
 
 
 26
 A. Becky Was Not the Subject of an Investigation
 
 
 27
 The trial court's finding that Becky was not a "subject" is not clearly erroneous.[7] At the suppression hearing, Crebo testified (and the trial court found) that he interviewed Becky as a witness in an investigation of the skimming and embezzlement activities of Morris Burner, Becky's business partner. The trial court found that Crebo was a credible witness; he had acted in good faith; and he did not have sufficient information to make Becky the subject of an investigation until about a year after the last interview, when Barbara Burner turned over a set of account books and was interviewed regarding the skimming operation in late 1989. Becky was further implicated when Morris Burner discussed the operation pursuant to his plea agreement in September 1990. Only thereafter did Crebo recommended investigation of Becky.
 
 
 28
 The three meetings took place as follows. On July 9, 1987, Crebo interviewed Becky in the I.R.S. offices. On August 22, 1987, Crebo met with Becky again in McDonald's, in order to review the memorandum that Crebo had prepared from the initial interview. Crebo gave Becky the opportunity to read it, make corrections, and sign it. Becky chose to sign after Crebo refused to allow him to leave with a copy of the unsigned memo in order to review it with a lawyer. The third meeting took place on October 28, 1988 in the I.R.S. offices. Crebo's stated purpose was to clarify certain financial transactions between Burner and Becky. This interview was initiated with a summons to Becky as a witness in relation to Burner's case. Becky was placed under oath, the interview was tape-recorded, and Becky was questioned about his dealings with Burner. Believing that Becky was trying to cover up for Burner, Crebo warned him repeatedly against committing perjury. (The trial court found that, contrary to Becky's argument, Crebo's warnings did not amount to threats or intimidation.) Becky was not advised of any rights, but he did not ask for counsel or indicate that he wanted to leave.
 
 
 29
 In July 1989, Crebo filed a report recommending prosecution of Burner. The report listed Becky as a witness and stated that Becky had no knowledge of Burner's illegal activities. The report stated that Burner had embezzled Becky's share as well as Burner's own share of the skim from their partnership business.
 
 
 30
 The report is persuasive evidence that Becky was not the subject of a criminal investigation at that point. If Crebo had contemplated later prosecution of Becky, it would have been foolhardy for him to conclude, in his report on Burner, that Becky had no knowledge of the scheme. At the time, Crebo had no way of knowing that he would later obtain account books from Barbara Burner that would alter his conclusion that Becky was not involved in the illegal activities.
 
 
 31
 Based on the foregoing facts, we conclude that Becky was not the "subject" of investigation during any of the interviews. I.R.S. regulations, therefore, did not require Crebo to advise Becky of his rights.
 
 
 32
 B. Agent Crebo's Failure to Advise Becky of His Right to Counsel at the August Meeting Does Not Require Suppression
 
 
 33
 Becky claims that, at the August meeting (at McDonald's), he was denied the right to consult with counsel, in violation of IRM 9352(1).[8] IRM 9352(1) requires the agent to advise a witness about the right to consult with counsel only if the witness inquires about such a right. The trial court found that Becky did not inquire about his right to counsel rather, Becky indicated that he did not want to sign the memorandum of the prior interview until he had an opportunity to go over it with an attorney. Crebo would not let him take the memorandum away unsigned, but Crebo did not force Becky to sign it. Becky chose to sign the memorandum. We agree with the district court that Becky's indicated desire to consult with counsel did not amount to an inquiry about his right to counsel, and, therefore, IRM 9352(1) was not violated.
 
 
 34
 Furthermore, even if an advisory about the right to counsel should have been given and was not, the situation does not present the kind of "unusual circumstances" that would permit suppression as a remedy for failure to comply substantially with agency procedures. See United States v. Caceres, 440 U.S. at 755-57; Gardner, 611 F.2d at 777.
 
 C. The October Meeting Was Not Custodial
 
 35
 Becky contends that the October 28, 1988 meeting was a "custodial interrogation," requiring a Miranda warning. We disagree.
 
 
 36
 "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1965). Because Becky was not under arrest and he had been given no indication that he was not free to leave, the October meeting was not custodial, despite the fact that his presence had been secured by a summons, he was put under oath, and the interview took place at the I.R.S. offices. Becky's situation was far less "inherently coercive"[9] than that deemed non-custodial in Minnesota v. Murphy, 465 U.S. 420 (1984).[10]
 
 
 37
 Because the October interview was non-custodial, use of Becky's statements was permissible under the general rule that "if a witness under compulsion to testify makes disclosures instead of claiming the privilege [against self-incrimination], the government has not 'compelled' him to incriminate himself." Garner v. United States, 424 U.S. 648, 654 (1976).
 
 
 38
 We conclude that the meetings were not conducted in violation of internal I.R.S. procedures or the requirements of Miranda v. Arizona. Accordingly, Becky's motion to suppress was properly denied.
 
 IV. SENTENCING
 
 39
 Becky claims two sentencing errors, both of which are without merit. First, he alleges that the Sentencing Guidelines do not apply to his case. The Guidelines apply to "offenses initiated before November 1, 1987, but not completed until after November 1, 1987." United States v. Gray, 876 F.2d 1411, 1418 (9th Cir. 1989), cert. denied, 495 U.S. 930 (1990). Becky has not challenged the district's finding that the conspiracy of which Becky was convicted continued past November 1, 1987. His first sentencing argument is therefore without merit.
 
 
 40
 Second, Becky argues that the judge chose a sentence at the high end of the Guideline range, causing Becky to be sentenced disproportionately severely compared to his co-conspirators. This second contention, too, is without merit. Becky was found to be at Guideline level 10, so that the trial court had discretion to impose a sentence within the range of straight probation to 12 months in prison. Becky was sentenced within that range to 11 months' incarceration, one year of supervised release, and a $50,000 fine. In contrast, one of his co-conspirators was sentenced to six months in a halfway house and five years' probation; the other received 120 days' house arrest, 8 years' probation, and a $50,000 fine. The co-conspirators pled guilty and testified for the government at Becky's trial. We find that the district court properly applied the Sentencing Guidelines. Becky's challenge to his sentence on the basis of disparity therefore must fail. See United States v. Taylor, 991 F.2d 533, 536 (9th Cir.), cert. denied, 114 S. Ct. 170 (1993).
 
 
 41
 The conviction and sentence are affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 18 U.S.C. Sec. 371 provides, in relevant part:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 [2]
 The court instructed the jury that there were four elements of conspiracy: (1) agreement to defraud the U.S. by impeding the I.R.S.; (2) knowledge of at least one of the objects of the conspiracy and intent to accomplish it; and (3) an overt act (4) done for the purpose of carrying out the conspiracy
 The court also instructed the jury that the good faith of the defendant would be a complete defense. "Good faith" was defined as, "among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations."
 
 
 [3]
 We reject Becky's contention that he did object to the court's instructions by submitting proposed alternative instructions. Offering an alternative instruction alone is not enough to satisfy the requirements of Rule 30; the district court must be fully aware of the objecting party's position. United States v. Williams, 990 F.2d 507, 511 (9th Cir. 1993). Becky's failure to object distinguishes his case from Caldwell, where the issue of the omitted element was sufficiently preserved for appeal. See 989 F.2d at 1060 n.6
 
 
 [4]
 See also Whitmore, 24 F.3d at 36, in which the court's failure to instruct on the knowledge requirement of 21 U.S.C. Sec. 843(b) (using a communication facility to engage in drug trafficking) was harmless because the defendant was also convicted of the underlying drug transaction, and the jury had been properly instructed that the defendant had to act knowingly with respect to the underlying transaction
 
 
 [5]
 Rule 30 provides:
 [A]ny party may file written requests that the court instruct the jury on the law as set forth in the request.... The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times.
 
 
 [6]
 Becky argues that I.R.S. procedures require that all interviewees be advised of certain rights, whether or not they are subjects of an investigation. He is mistaken. The regulation on which he relies, IR-949 (Nov. 26, 1968), was replaced and updated by Internal Revenue Manual 9384.2(2) and IRS Special Agents' Handbook [9781] 341.132, which clarify that the IR-949 advisory must be given to "subjects" of an investigation. IRM 9352, entitled "Rights of Witnesses," provides only one right: "A witness ... has the right to be accompanied, represented, and advised by counsel. ... A witness should be informed of this right if he/she inquires regarding it."
 
 
 [7]
 This court reviews for clear error the factual findings underlying a challenge to the adequacy of pre-interrogation warnings. Connell, 869 F.2d at 1351
 
 
 [8]
 See supra note 6
 
 
 [9]
 See Roberts v. United States, 445 U.S. 552, 559 (1980)
 
 
 [10]
 In Murphy, the Supreme Court held that a probationer was not "in custody" when ordered to appear and answer truthfully to questions put to him by a probation officer. The Court therefore permitted the use of un-Mirandized incriminating statements made in that context
 Becky's situation was also less intimidating than that deemed non-custodial in Oregon v. Mathiason, 429 U.S. 492 (1977), where an actual suspect was asked to come down to the police station for questioning. At the station, the suspect was informed that the police believed he was involved in a burglary, that his truthfulness would possibly be considered by the district attorney or judge, but that he was not under arrest. The Supreme Court held the suspect's confession admissible because the suspect was not in custody or otherwise deprived of his freedom of action in any significant way. Id. at 495.