T.C. Memo. 1999-68


UNITED STATES TAX COURT


WARREN R. KETLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7662-96.                    Filed March 5, 1999.


Warren R. Ketler, pro se.

<u>Jeffrey L. Heinkel</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GALE, <u>Judge</u>:  Respondent determined deficiencies and
additions to tax in petitioner's Federal income taxes as follows:

|      |            | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1990 | $9,318 | $2,330 | $610 |
| 1991 | 7,110 | 1,778 | 406 |

Respondent subsequently filed an amendment to answer, asserting increased deficiencies and additions to tax to the following amounts:

|      |            | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1990 | $33,544 | $8,386 | $2,209 |
| 1991 | 29,402 | 7,351 | 1,691 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner failed to report income for 1990 in the amount of $92,656; (2) whether petitioner failed to report income in 1991 in the amount of $78,996; (3) whether petitioner is liable for self-employment taxes in the amounts of $7,849 and $9,038 for the years 1990 and 1991, respectively; (4) whether petitioner is subject to additions to tax for failure to file Federal income tax returns for the years 1990 and 1991; and (5) whether petitioner is liable for additions to tax for failure to make estimated tax payments for the taxable years 1990 and 1991.

FINDINGS OF FACT

Petitioner was a resident of California at the time the petition herein was filed. Petitioner did not file Federal

individual income tax returns for his taxable years 1990 and 1991. Nor did he make estimated tax payments for those years.

During 1990 and 1991, under his personal Social Security number and at his mailing address, petitioner received payments on behalf of "California Barbecue". On the basis of information reported by payers, respondent determined that petitioner, doing business as California Barbecue, had received the following nonemployee compensation during those years:

| Payer | 1990 | 1991 |
|-------|------|------|
| Hewlett-Packard Co. | $774 | --- |
| Stanford University | 736 | $28,072 |
| Syva Co. | 1,858 | --- |
| Apple Computer, Inc. | 5,405 | --- |
| Oracle Corp. | 1,071 | --- |
| Nordstrom, Inc. | 5,515 | --- |

Respondent further determined that, during the same years petitioner had received payments of interest as follows, on the basis of reports of the payer:

| Payer | 1990 | 1991 |
|-------|------|------|
| Great Western Bank | $644 | $138 |

Additionally, records filed with respondent by the Social Security Administration reflect that petitioner received Social Security payments as follows:

| Payer | 1990 | 1991 |
|-------|------|------|
| Social Security Admin. | $9,496 | $10,006 |

Of the payments from the Social Security Administration, $4,748 represents taxable income for petitioner's taxable year 1990 and

$5,003 represents taxable income for petitioner's taxable year 1991.

With respect to 1990, respondent consulted Bureau of Labor Statistics (BLS) tables to determine the average amount of income that a person who met certain criteria applicable to petitioner would have earned during that year. Respondent then added an additional amount to the sums revealed as income in the Forms 1099-MISC in order to arrive at a reconstructed income for petitioner that equaled the average determined by using the BLS tables.

During the pretrial phase of this case, respondent served a request for admissions and a request for production of documents upon petitioner. Although petitioner acknowledges receiving these items, no response was forthcoming.[1] On March 19, 1997, respondent served a motion to compel production of documents. This motion was returned to respondent on or about April 2, 1997. Respondent then realized that the request for production of documents, as well as the motion to compel production of documents, had been addressed to petitioner at P.O. Box 239, Palo Alto CA 94023, instead of at the address reflected on his petition, P.O. Box 239, Los Altos CA 94023. On April 11, 1997, respondent served another copy of the motion to compel production

_____

[1] The matters set forth in the request for admissions are deemed admitted. See Rules 90(c), 104(d). We note further that other evidence presented by respondent at trial substantiates the matters deemed admitted.

of documents at the proper address.  Petitioner did not respond to this motion.

Shortly before the trial opened, the Great Western Bank, pursuant to a summons, provided respondent with bank records. The records reveal that, during the years in issue, petitioner maintained a Great Western Bank account in the name of "Warren R. Ketler, D.B.A. Thru The Lens".  The signature card for the account used petitioner's Social Security number and address. Thru The Lens is a photography business.  Bank statements of this account, No. 308-8083971, reveal total deposits of $8,563 for petitioner's taxable year 1990 and $23,691 for 1991.

The summoned records also reveal that petitioner had a separate individual account at Great Western Bank, No. 308-8064948, maintained under his own Social Security number and mailing address.  Statements of this account reveal total deposits of $80,609 for 1990 and $39,467 for 1991.  Petitioner commingled the income and expenses of Thru The Lens between account Nos. 308-8083971 and 308-8064948.

Respondent then reconstructed petitioner's income on the basis of these bank records.  Respondent determined that some of the deposits into the Thru The Lens account were not accessions to income but rather transfers from petitioner's individual account.  These transfers totaled $2,900 in 1990 and $1,000 in 1991.  Respondent further determined that some expenditures from the Thru The Lens account were deductible business expenditures; these totaled $4,499 for 1990 and $6,168 for 1991.

On the basis of the foregoing, respondent calculated that petitioner had additional income in 1990 and 1991 from Thru The Lens, as follows:

|  | 1990 | 1991 |
|---|---|---|
| Total deposits | $89,172 | $63,158 |
| Less transfers | (2,900) | (1,000) |
| Net deposits | 86,272 | 62,158 |
| Less business expenses | (4,499) | (6,168) |
| Net profit | 81,773 | 55,990 |

Respondent's counsel then contacted petitioner and asked whether petitioner would attend a meeting to review and explain the entries in the bank records. Petitioner declined to do so. At trial, we granted respondent leave to file an amendment to answer, setting forth the increased deficiencies based upon the inclusion of the Thru The Lens income.[2]

OPINION

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In cases involving the Commissioner's determinations of unreported income,

_____

[2] Respondent's amendment to answer indicates petitioner earned more than enough income to support himself during 1990. Accordingly, respondent did not use BLS statistics to calculate the amount of deficiencies set forth in the amendment to answer. Nor did the deficiencies reflected in the amendment to answer include payments of interest from Great Western Bank. Apparently respondent omitted that interest income as a separate item because it was part of the reconstructed income reflected as deposits to petitioner's bank account.

the presumption of correctness may not attach, and the finding of unreported income may be arbitrary, unless the Commissioner links the taxpayer to an income-producing activity, see Palmer v. IRS, 116 F.3d 1309, 1313 (9th Cir. 1997); Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); or to ownership of liquid assets, see Erickson v. Commissioner, 937 F.2d 1548, 1551-1552 (10th Cir. 1991), affg. T.C. Memo. 1989-552; Delaney v. Commissioner, 743 F.2d 670, 672 (9th Cir. 1984), affg. T.C. Memo. 1982-666; Tokarski v. Commissioner, 87 T.C. 74, 76 (1986).[3]

Respondent has linked petitioner to income-producing activities and ownership of liquid assets in 1990 and 1991. Petitioner is deemed to have admitted, and third-party information returns document, that he received nonemployee compensation in 1990 in connection with the California Barbecue activity from Hewlett-Packard Co., Stanford University, Syva Co., Apple Computer, Inc., Oracle Corp., and Nordstrom, Inc.; and in 1991 from Stanford University.  This evidence further shows that Forms 1099-MISC were issued by the foregoing payers to California Barbecue at petitioner's address, with a taxpayer identification number that matched petitioner's Social Security number.

---

[3] The rule requiring the Commissioner to provide an evidentiary foundation linking the taxpayer to the income-producing activity arose in connection with illegal-source income.  See Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977).  It is now established that the Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, applies the rule in all cases involving the receipt of unreported income.  Cf. Palmer v. IRS, 116 F.3d 1309, 1313 (9th Cir. 1997); Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982).

Further, the regularly maintained business records of Behring Diagnostics, the corporate successor of Syva Co., contain invoices from California Barbecue for various catering services in 1990 and 1991, as well as copies of Syva Co.'s checks in payment of these invoices. Syva Co.'s records also contain a copy of a Form 1099-MISC issued to California Barbecue for 1990 (listing petitioner's Social Security number as the taxpayer identification number), and no Form 1099-MISC for 1991 (in which payments to California Barbecue did not exceed $600). Syva Co.'s records also contain invoices with the legend "California Barbeque" and petitioner's address printed thereon. Further, it was Syva Co.'s policy to obtain a taxpayer identification number before making payment on an invoice.

In addition, respondent has matched petitioner's Social Security number and address to a bank account registered in his name "D.B.A. Thru The Lens, Sole Proprietor". Numerous deposits were made to, and checks drawn on, this account during 1990 and 1991. The checks for this account were preprinted with petitioner's address and the legend "Thru The Lens".

Accordingly, the determination of unreported income in the notice of deficiency is presumptively correct, and the unreported income alleged in respondent's amendment to answer is not arbitrarily asserted.

A.  Reconstruction of Income

Every individual liable for income taxes is required to maintain books and records sufficient to establish the amount of his or her gross income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  In the absence of books and records, the Commissioner may reconstruct a taxpayer's income by any method that clearly reflects income.  Sec. 446(b).  The choice of the method of reconstruction of income lies with the Commissioner.  See Estate of Rau v. Commissioner, 301 F.2d 51, 54 (9th Cir. 1962) (citing Schellenbarg v. Commissioner, 31 T.C. 1269, 1277 (1959), affd. in part and remanded on another issue 283 F.2d 871 (6th Cir. 1960)), affg. T.C. Memo. 1959-117.  The Commissioner possesses substantial latitude in reconstructing a taxpayer's income when the taxpayer fails to maintain records.  See Petzoldt v. Commissioner, 92 T.C. 661, 695-696 (1989).

Here, respondent has reconstructed petitioner's income using both information received from third-party payers concerning payments made with respect to petitioner's Social Security number, address, and a business, California Barbecue, with which he acknowledges involvement; and bank accounts bearing his name, Social Security number, and address.  We accept both methods as permissible means of reconstructing income.

1.  Income Reported on Information Returns

The Commissioner may properly reconstruct a taxpayer's income from third-party payers' reports, such as Forms 1099-MISC.[4]  See Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); Andrews v. Commissioner, T.C. Memo. 1998-316; White v. Commissioner, T.C. Memo. 1997-459.  In this case we conclude that petitioner received the amounts of income reported to respondent in the Forms 1099-MISC as payments to California Barbecue for the years in issue.  The evidence suggests that this income represents amounts paid for large-volume food catering services provided by petitioner.  Petitioner, however, did not provide any information about California Barbecue or its operations, income or expenses to respondent or the Court.  Thus, while petitioner

---

[4] Although neither party has raised the issue, we note that sec. 6201(d), as amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 602(a), 110 Stat. 1452, 1463 (1996), was effective as of July 30, 1996.  Sec. 6201(d) provides that if the taxpayer, in a court proceeding, asserts a reasonable dispute with respect to the income reported on an information return, and fully cooperates with the Commissioner, then the Commissioner shall have the burden of producing reasonable and probative information in addition to the information return.

Even if petitioner had advanced that argument, we would conclude he had not asserted a reasonable dispute with respect to any item of income reported on an information return.  He did not file a Federal income tax return, nor did he offer testimony indicating that he did not receive those items of income reported on the Forms 1099-MISC.  Nor, for that matter, did he deny receiving the amounts deposited in the Great Western Bank. Additionally, sec. 6201(d) would not be applicable because petitioner offered no evidence that he fully cooperated with respondent.  To the contrary, the record amply demonstrates his failure to cooperate, including his failure to provide access to documents within his control.  We hold that petitioner retained the burden of proof as to the taxability of the income revealed in the Forms 1099-MISC.  Cf. Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997).

likely incurred deductible expenses relating to the California Barbecue business, we have no evidence regarding the amount of such expenses. "While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred (Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930)), we must have some basis on which an estimate may be made." Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Here, petitioner could have provided such a basis but refused to do so. Without such a basis, the allowance of any such deductions would amount to "unguided largess". Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Accordingly, on the evidence before us, we hold that petitioner is liable for taxes upon the amounts reported in the Forms 1099-MISC.[5]

At trial, petitioner argued that California Barbecue was merely a business name for a corporation named Kaytoo, Inc. Respondent's certified transcripts of account indicate, however, that income paid to California Barbecue was paid to petitioner individually. An example of such evidence is a certified

_____

[5] Petitioner deposited income from California Barbecue into the Great Western Bank, under account No. 308-80757-8. At the time of trial, respondent did not have records of amounts deposited into Great Western Bank account No. 308-80757-8. Accordingly, the income attributed to petitioner doing business as California Barbecue reflects only those amounts revealed in the Forms 1099-MISC; it does not include other amounts that may have been deposited into that account. In this regard, we note that third-party payers are required only to report payments over $600. Sec. 6041(a). We have no information of the extent to which petitioner, doing business as California Barbecue, received payments of less than $600.

official record which demonstrates that Stanford University issued a Form 1099-MISC reporting $28,072 paid to California Barbecue in 1991, using petitioner's mailing address and petitioner's individual Social Security number as the "Taxpayer Identification Number". Petitioner subsequently placed in evidence a "corrected" Form 1099-MISC reflecting payment of the same $28,072 by Stanford University to California Barbecue in 1991. The corrected Form 1099-MISC, however, was sent to "Kaytoo Corporation, D.B.A. California Barbecue". It also provided a taxpayer identification number that was not petitioner's Social Security number. Although the postmark on the envelope enclosing this reissued Form 1099-MISC is barely legible, it does establish that the corrected Form was mailed to respondent no earlier than April 27, 1996, after petitioner had filed this case. At trial, petitioner provided only evasive and irrelevant testimony as to the circumstances surrounding the issuance or reissuance of this Form 1099-MISC.[6] Under these circumstances, we are of the opinion that the reissued document has no probative value in establishing that amounts paid to California Barbecue were paid to a corporation rather than to petitioner as an individual. To

---

[6] For example, petitioner refused to answer questions as to the Stanford University Forms 1099-MISC based upon his Fifth Amendment rights. It is settled that a taxpayer's right not to be deprived of property under the Fifth Amendment to the Constitution is not a defense to collection of taxes. Nor, absent a demonstration of a real and appreciable danger of criminal prosecution, may a taxpayer invoke the Fifth Amendment protections against self-incrimination. See United States v. Carlson, 617 F.2d 518, 522-523 (9th Cir. 1980); Rowlee v. Commissioner, 80 T.C. 1111, 1122 (1983), and cases cited therein.

the contrary, as we have found, the $28,072 paid by Stanford University in 1991 to California Barbecue is properly taxable to petitioner as an individual.

2. Bank Deposits Analysis

Respondent, in an amendment to his answer, asserts increased deficiencies based upon deposits made into bank accounts maintained in petitioner's name and Social Security number. Because respondent first asserted the increases in deficiency in an amendment to the answer, respondent bears the burden of proof as to those increases. See Rule 142(a).

Bank deposits are prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. at 77. In demonstrating the existence of income under the bank deposits method, the Commissioner is not required to show a likely source of that income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994). The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, although the Commissioner must take into account any nontaxable source or deductible expense of which the Commissioner has knowledge. See id.; DiLeo v. Commissioner, 96 T.C. at 868.

In this case, respondent has met his burden of proof as to income under the bank deposits method. Respondent produced records from two Great Western Bank accounts, Nos. 308-8083971 and 308-8064948, maintained by petitioner. The first used the name "Warren R. Ketler, D.B.A. Thru The Lens" and employed petitioner's Social Security number and address. The second was

in petitioner's own name and used petitioner's Social Security number and address.

In reconstructing petitioner's income, respondent has properly excluded several items from the total deposits in account No. 308-8083971. Respondent excluded these items because they appeared to be transfers from account No. 308-8064948, and, as such, they had already been included as income in the form of deposits to account No. 308-8064948. From the remaining amounts in each account, respondent also properly subtracted a number of items that appeared to be checks issued in payment of deductible business expenses. The remaining unexplained deposits totaled $81,773 and $55,990 for the respective years in issue. Respondent invited petitioner to confer so that petitioner could explain the transactions in these bank accounts, but petitioner refused to do so. When asked at trial to explain the transactions reflected in these accounts, petitioner again declined to do so.

We hold that under the bank deposits method, respondent has borne the burden of showing that these amounts, $81,773 and $55,990, are additional unreported taxable income for the years 1990 and 1991, respectively. See United States v. Stone, 770 F.2d 842, 845 (9th Cir. 1985); United States v. Soulard, 730 F.2d 1292, 1298 (9th Cir. 1984).

B.  Petitioner's Legal Contentions

On brief, petitioner's response to the deficiencies and additions to tax has been to assert discredited tax-protester

arguments, such as his assertion that he is a "not a taxpayer" and therefore not subject to the internal revenue laws. The Court of Appeals for the Ninth Circuit has characterized this argument as "frivolous", noting that it "has been consistently and thoroughly rejected by every branch of the government for decades. Indeed, advancement of such utterly meritless arguments is now the basis for serious sanctions imposed on civil litigants who raise them." United States v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986).

Moreover, petitioner, having invoked the jurisdiction of this Court, now seeks to defeat it, arguing that we lack personal jurisdiction over him. This argument is also baseless. Section 6213(a) authorizes this Court to redetermine deficiencies in income tax if a timely petition is filed by a taxpayer in respect of a notice of deficiency sent to the taxpayer by the Commissioner. Here, petitioner himself invoked this Court's jurisdiction over the matter of his tax deficiencies for the years in issue by filing a timely petition. Borders v. Commissioner, T.C. Memo. 1994-626. The jurisdiction of this Court, once invoked, remains unimpaired until it decides the controversy. Dorl v. Commissioner, 57 T.C. 720 (1972).

Petitioner's arguments continue through 13 "notices", none of which addresses the factual accuracy of respondent's determinations of deficiencies and additions to tax. None presents justiciable issues of fact or law concerning petitioner's liabilities for the deficiencies in tax and

additions to tax at issue.  They are instead recastings of contentions which we have termed "nothing more than tax protester rhetoric and legalistic gibberish, which have absolutely no merit".  Howard v. Commissioner, T.C. Memo. 1998-57.[7]  We decline to address them further.  In McCoy v. Commissioner, 76 T.C. 1027, 1029-1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983), we stated that

> The time has arrived when the Court should deal
> summarily and decisively with such cases without
> engaging in scholarly discussion of the issues or
> attempting to soothe the feelings of the petitioners by
> referring to the supposed "sincerity" of their wildly
> espoused positions.

C.  Self-Employment Tax

Section 1401 imposes a tax on an individual's self-employment income, which is defined as the net earnings from self-employment derived by an individual during the taxable years.  See sec. 1402(b).  Net earning from self-employment means gross income, less certain deductions, derived by an individual from any trade or business carried on by the individual.  See

---

[7] Before trial and on brief, petitioner asserted that he did not understand the word "income".  At calendar call we referred petitioner to members of the Taxation Section of the California Bar Association who were present in the courtroom, explaining that they had offered to assist with such questions on a pro bono basis.  Petitioner declined to accept our referral.  Petitioner's obvious intelligence and experience in conducting business makes us doubt his sincerity in arguing that he failed to understand the concept of "income".  Instead, his consistently frivolous contentions indicate that his asserted misunderstanding of the word "income" was willful, based upon discredited tax-protester arguments that the income he undoubtedly received was somehow something else.  Cf. United States v. Buras, 633 F.2d 1356, 1361 (9th Cir. 1980); Rowlee v. Commissioner, 80 T.C. at 1120-1122.

sec. 1402(a). Respondent determined that petitioner is liable for self-employment taxes under section 1401 as part of the deficiencies at issue for 1990 and 1991. The evidence in this case indicates that petitioner earned self-employment income from both the California Barbecue and the Thru The Lens activities. Petitioner has offered no evidence or argument to rebut that evidence. He is liable for the self-employment tax for 1990 and 1991 determined by respondent and asserted in the amendment to answer.

D. Additions to Tax Under Section 6651(a)(1)

Respondent determined additions to tax under section 6651(a)(1) for failure to file returns. Petitioner did not file Federal income tax returns for the years in issue. He makes only tax-protester arguments in response to the charge that he failed to file such returns. Accordingly, the additions to tax under section 6651(a)(1) determined by respondent and asserted in the amendment to answer are sustained.

E. Additions to Tax Under Section 6654(a)

Respondent determined additions to tax under section 6654(a) for underpayment of individual estimated tax. Petitioner failed to pay estimated tax during the years in issue. Accordingly, the additions to tax under section 6654 determined by respondent and asserted in the amendment to answer are sustained.

In view of the foregoing,

Decision will be entered

for respondent.